[No. D053134. Fourth Dist., Div. One. Aug. 19, 2009.]

COFFMAN SPECIALTIES, INC., Plaintiff and Appellant, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

_____
*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication
with the exception of Discussion parts II.B., II.C., and III.

1136

**COUNSEL**

Braun & Melucci and Kerri M. Melucci for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger and Douglas J. Woods, Assistant Attorneys General, Stephen P. Acquisto and Ross C. Moody, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**HALLER, Acting P. J.**—Coffman Specialties, Inc. (Coffman), an engineering contractor, brought an action against California's Department of Transportation (Caltrans) seeking a declaratory judgment that arbitration provisions in the State Contract Act are unconstitutional. (Pub. Contract Code,[1] § 10240 et seq.) Coffman contends these provisions, on their face and as applied, violate its constitutional rights to a neutral arbitrator, petition the government, and equal protection of the law. The trial court sustained Caltrans's demurrer without leave to amend, and entered judgment in Caltrans's favor. Coffman appeals. We affirm.

### STATUTORY OVERVIEW

The State Contract Act governs specified public works projects that exceed a certain cost, and requires competitive bidding for covered projects. (§ 10105.) The Act mandates that once a bid is accepted and the parties enter into a contract, the "remedy for the resolution of claims" arising from the contract "shall be arbitration" under the statutory provisions. (§ 10240.) This arbitration process is administered by the Office of Administrative Hearings (OAH), and by a committee composed of industry and governmental representatives, known as the Public Works Contract Arbitration Committee (Public Works Arbitration Committee). (§§ 10245, 10245.2; Cal. Code Regs., tit. 1, § 1310.)[2]

The Public Works Arbitration Committee certifies arbitrators with experience in large-scale public construction matters to preside over statutory public works arbitration hearings, and maintains a list of those certified arbitrators (the Certified Panel). (§§ 10240.3, 10245, 10245.3; Regs., § 1395, subd. (d).) The State Contract Act and the implementing regulations provide a detailed procedure to assist the parties in mutually selecting an arbitrator from the Certified Panel, and allow the parties to petition the superior court if this process does not result in the selection of a mutually agreeable arbitrator. (§ 10240.3; Regs., § 1321.) Once the arbitrator is selected, the arbitrator is subject to numerous disclosure obligations, and either party may disqualify the arbitrator based on a required disclosure. (Regs., § 1322.) An arbitrator's

---

[1] All statutory references are to the Public Contract Code unless otherwise specified.

[2] All further citations to title 1 of the California Code of Regulations shall be abbreviated as Regs.

failure to disclose is a basis for vacating the arbitration award after it is issued. (§ 10240.12; Code Civ. Proc., § 1286.2, subd. (a)(6); *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903].)

## FACTUAL AND PROCEDURAL BACKGROUND

### *Coffman's Public Works Contracts*

Coffman successfully bid on three road construction projects governed by the State Contract Act, and entered into three separate contracts with Caltrans. The parties later had disputes on each project, and Coffman sought arbitration, or planned to seek arbitration, with respect to these disputes. The following summarizes the facts alleged pertaining to each of these construction projects.

### *Route 7 Project*

Coffman entered into a contract requiring Coffman to construct Highway 7 between Highway 98 and Interstate 8. The stated contract price was $32,345,000. During the construction, numerous disputes arose between Caltrans and Coffman concerning issues such as the scope of the work and differing site conditions. In July 2005, Coffman substantially completed the work. In June 2006, Caltrans issued a final denial of Coffman's claims for additional payments.

In September 2006, Coffman filed an arbitration complaint against Caltrans for $5,793,846. Coffman requested that Caltrans stipulate to an experienced and qualified arbitrator from outside the Certified Panel. Caltrans refused to agree to this request. Coffman and Caltrans then participated in, and exhausted, the arbitrator selection process under the applicable regulations.

In July 2007, Coffman filed a petition with the superior court seeking an order declaring the statutory arbitration requirement to be facially unconstitutional and unenforceable. In response, Caltrans filed its own petition for the appointment of an arbitrator from the Certified Panel. The court denied Coffman's petition, but stated the denial was without prejudice to raise the constitutional challenge in an alternate forum. The court then granted Caltrans's request for the appointment of an arbitrator. In October 2007, the

court issued a minute order appointing David Robison from the Certified Panel as an arbitrator on the Route 7 project arbitration.

*Route 15 Project*

In 2003, Coffman and Caltrans entered into a written contract for construction work along Interstate 15. The stated contract price was $16,255,000. Coffman completed the work in about October 2005. During the project, various disputes arose between Coffman and Caltrans. In July 2007, Caltrans issued a final written decision denying Coffman's claims for additional payment. In October 2007, Coffman filed an arbitration complaint against Caltrans for $370,191.93. The arbitration proceeding is currently pending.

*Interstate 15/Route 56 Project*

In 2003, Coffman and Caltrans entered into a written contract for the construction of managed lanes on Interstate 15 at the Interstate 15/Route 56 separation. The stated contract amount was $51,544,999.50. Coffman began work in December 2003. The work has not yet been completed, but Coffman has calculated that it will be owed an additional $10 million based on the parties' existing disputes. Upon completion of the project, Coffman intends to submit a claim for payment, and if the claim is denied, it will be required to file a complaint in arbitration with the OAH.

*Declaratory Relief Complaint*

In November 2007, Coffman filed the declaratory relief complaint at issue in this appeal. Coffman alleged the facts summarized above pertaining to the three construction projects, and asserted two causes of action. In the first cause of action, Coffman alleged the arbitration rules in the State Contract Act and implementing regulations are facially unconstitutional because the rules (1) "create an inherent financial bias in the arbitrator" to favor Caltrans because of Caltrans's status as a "repeat customer" in the arbitrations; (2) violate a contractor's First Amendment right to petition and due process rights by requiring contractors to pay one-half the costs of the arbitration; and (3) violate a public works contractor's equal protection rights by requiring claims against Caltrans to proceed under the arbitration scheme, while excluding contractor claims against other public agencies.

In the second cause of action, Coffman alleged the arbitration provisions are unconstitutional "as applied" because all arbitrators on the Certified Panel

are biased in favor of Caltrans. Coffman did not allege any specific supporting facts, but instead asserted generally that Caltrans's substantial delay in the contract payment and arbitration process "effectively chills and abridges the contractor's ability to receive payment for work performed" and is intended to "punish and deter a contractor from pursuing his or her statutory rights."

*Demurrer*

Caltrans filed a demurrer, arguing that Coffman's complaint failed to state a cognizable cause of action. On the facial challenge, Caltrans argued the statutory scheme does not result in biased arbitrators or violate a contractor's First Amendment or equal protection rights. On the as-applied challenge, Caltrans argued that Coffman did not allege any facts about the manner in which the arbitration provisions were unconstitutional as applied to Coffman's case. Caltrans further asserted that the claim was not ripe because Coffman's concerns were hypothetical and Coffman has not suffered any harm.

In response, Coffman focused primarily on its argument that the Certified Panel arbitrators are necessarily biased in favor of Caltrans because Caltrans is a "repeat customer" at public works arbitrations. In support, Coffman discussed facts that were not alleged in the complaint. First, Coffman stated that Caltrans is a party in 72 percent of all public works arbitration hearings, citing statistical records posted on the OAH Web site. Second, Coffman asserted that 53 of the 61 Certified Panel arbitrators have previously worked (at unspecified times) as an arbitrator on a Caltrans arbitration, and therefore 87 percent of the arbitrators are "biased by statutory definition." Based on these facts, Coffman argued the entire statutory scheme "is set up in such a way that every arbitrator on the panel has an inherent financial incentive to rule in favor of the state and [Caltrans] because the state is always a party and [Caltrans] is the arbitrator's repeat customer 72 % of the time."

At the hearing on the demurrer, Coffman's counsel also discussed the status of the arbitration in the Route 7 project matter. He stated that Caltrans had objected to the original arbitrator selected by the court (Robison) on the basis that Robison had previously served as an arbitrator for Coffman. The court then appointed another arbitrator who had issued a large monetary award in favor of a different contractor, but Caltrans also successfully objected to this arbitrator. Coffman's counsel argued that Caltrans's objec-

tions to these Certified Panel arbitrators support Coffman's claims that the statutory scheme results in biased arbitrators. Counsel said Coffman could amend its complaint to add these and other factual allegations "to show how [Caltrans] is able to manipulate the system."

After the hearing, the court sustained the demurrer without leave to amend. The court found Coffman failed to state facts sufficient to support a facial or an as-applied constitutional challenge to the applicable arbitration provisions.

## DISCUSSION

### I. *Review Standards*

On appeal from a judgment dismissing an action after the court sustained a demurrer, a reviewing court must determine whether the complaint states facts sufficient to constitute a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Ibid.*) We treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*) We exercise our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory. (*Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1162–1163 [8 Cal.Rptr.3d 259, 82 P.3d 286].) We further examine "whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].)

■ Coffman brought a facial and an as-applied challenge to the constitutionality of the public works arbitration statutes. The validity of both claims may be decided on a demurrer. (See *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 478 [97 Cal.Rptr.2d 334, 2 P.3d 581]; *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 172 [81 Cal.Rptr.2d 324]; *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 509–510 [120 Cal.Rptr.2d 197].) However, the analysis is different on each claim.

■ In evaluating a facial challenge, a court considers "only the text of the measure itself, not its application to the particular circumstances of an

individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) The California Supreme Court has not articulated a single test for determining the propriety of a facial challenge. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126 [90 Cal.Rptr.3d 701, 202 P.3d 1089].) Under the strictest test, the statute must be upheld unless the party establishes the statute " 'inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions.' " (*Ibid.*) Under the more lenient standard, a party must establish the statute conflicts with constitutional principles " 'in the generality or great majority of cases.' " (*Ibid.*, italics omitted.) Under either test, the plaintiff has a heavy burden to show the statute is unconstitutional in all or most cases, and " 'cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute.' " (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 39 [124 Cal.Rptr.2d 701, 53 P.3d 119].)

■ On an as-applied challenge, the plaintiff must plead and prove the specific facts giving rise to the alleged constitutional violation. (See *Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1084.) To prevail, the plaintiff must establish the particular application of the statute violates the plaintiff's constitutional rights. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 404–405 [149 Cal.Rptr. 375, 584 P.2d 512].)

## II. Facial Challenge

In its complaint, Coffman alleges three separate ways in which the arbitration provisions in the State Contract Act and implementing regulations facially violate a contractor's constitutional rights: (1) establishing an arbitration system whereby all arbitrators are biased in favor of Caltrans; (2) violating a contractor's constitutional petition rights by requiring the contractor to share in the cost of the arbitration; and (3) violating a contractor's equal protection rights. We conclude the complaint does not state a valid cause of action on any of these three grounds, nor does any proposed amendment to the complaint support the cause of action.

### A. Contentions Pertaining to Biased Arbitrators

Coffman contends "all" arbitrators appointed from the Certified Panel have a financial incentive to rule in favor of the state and therefore "all" arbitrators are biased in favor of Caltrans. In considering this claim, we first summarize

the statutory and regulatory provisions governing the selection of an arbitrator, and then examine Coffman's arguments that this process inevitably results in a biased arbitrator.

### 1. *Provisions Governing Arbitration Selection Process*

■ The State Contract Act requires an arbitrator to be selected from the Certified Panel, unless the parties agree otherwise. (§ 10240.3; see *Brutoco Engineering & Construction, Inc. v. Superior Court* (2003) 107 Cal.App.4th 1326, 1332–1333 [132 Cal.Rptr.2d 866] (*Brutoco*).) The arbitrators on the Certified Panel are chosen by the Public Works Arbitration Committee. (§§ 10240.3, 10245, 10245.3.) The Public Works Arbitration Committee consists of seven members: (1) three public members appointed by the Governor, each of whom has at least 10 years' experience with a general contracting firm engaged in public works construction; (2) three government officers/employees appointed by directors of the various departments (including Caltrans); and (3) the OAH director, who is a nonvoting member. (§ 10245.) The appointed public members serve four-year terms, and serve without compensation, except for expense reimbursement. (*Ibid.*)

The Public Works Arbitration Committee is responsible for establishing "standards and qualifications for the certification of arbitrators" and for "certify[ing] as arbitrators persons meeting such standards and qualifications." (§ 10245.3.) Arbitrators selected by the Committee are required to have "substantial experience" in large-scale public works construction projects, experience as public works arbitrators, and knowledge of California law. (Regs., § 1395.)

■ The State Contract Act and implementing regulations provide detailed rules governing the selection of an arbitrator from the Certified Panel. The fundamental principles underlying these rules are full disclosure and mutual consent. After a party initially serves an arbitration complaint, the parties have 20 days to "agree on the selection of an Arbitrator." (Regs., § 1321, subd. (b).) If no agreement is reached, the regulations provide for a process in which the OAH assists the parties in identifying an arbitrator who is acceptable to both parties. (*Ibid.*) Under these rules, each party must submit to the OAH a list of five acceptable arbitrators from the Certified Panel, and the OAH then reviews these lists for mutual preferences and selects an arbitrator who appears on both lists. (*Ibid.*)[3]

---

[3] These rules state: "[T]he [parties] shall, within 30 days after service of the complaint . . . file a list of 5 acceptable Arbitrators ranked in order of preference with the [OAH] . . . . If one or more names appear in common on both lists submitted by the [parties], the [OAH] shall appoint the Arbitrator from among such names and in accordance with the preferences indicated by the lists." (Regs., § 1321, subd. (b).) "If no name on the lists . . . appears in common, the [OAH] shall

If a mutually acceptable arbitrator has not been identified after the second round of arbitrator list submissions, or six months from the filing of the arbitration complaint, whichever comes first, either party "may petition the Superior Court to select one or more Arbitrators in order of preference from among those who have indicated a willingness to serve as an Arbitrator in the location for the hearing. . . ." (Regs., § 1321, subd. (d).) Code of Civil Procedure section 1281.6 provides the court with the authority to appoint an arbitrator when the parties cannot agree to an arbitrator.

■ Once an arbitrator is selected (either through the administrative process or by the superior court after a petition by a party), the prospective arbitrator "shall disclose to the [OAH] any circumstances likely to prevent a prompt hearing and decision or to create a presumption of bias." (Regs., § 1322, subd. (a).) The disclosures must satisfy specific standards from the Judicial Council's Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards), including standard 7. (Regs., § 1322, subd. (a).)[4]

■ Standard 7 provides: "A person who is nominated or appointed as an arbitrator must disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial . . . ." (Ethics Stds., std. 7(d).) The standard then contains numerous rules requiring an arbitrator to disclose certain relationships or circumstances, which specifically include an arbitrator's prior service as a hearing officer for either party during the previous five years and detailed

---

combine the listed names with ten additional names from the certified panel and submit simultaneously to the [parties] a list of names so constituted. The names selected from the certified panel shall be selected at random from those who have indicated a willingness to serve as an Arbitrator in the location for the hearing unless the [parties] agree that those so named be limited to persons with expressly designated special technical expertise or qualifications." (*Id.*, subd. (c).) "The [parties] shall, within 15 days from the mailing date of the list, cross off any names to which it objects, number the remaining names indicating the order of preference, and file the list with the [OAH] with a copy to each other. If either or both [of the parties] does not return the list within the time specified or does not indicate an order of preference, all persons named therein shall be deemed equally acceptable. [¶] From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the [OAH] shall appoint the Arbitrator. If for any reason the appointment cannot be made from the submitted list, the [OAH] shall repeat the submission process with an entirely different list of 20 names selected at random from those who have indicated a willingness to serve as an Arbitrator in the location for the hearing." (*Id.*, subd. (d).)

[4] Although Regulation section 1322, subdivision (a) refers to the 2003 version of the Ethics Standards, those standards have since been amended effective January 1, 2007. (23 pt. 4 West's Ann. Court Rules (2006 ed.) pp. 376–400.) All further references to the Ethics Standards are to this version of the standards.

facts about the prior service, including the identity of the prevailing party and the amount of the award.[5] (Ethics Stds., std. 7(d)(4)(A) & (B).)

---

[5] Standard 7(d) requires the following information to be disclosed: "(1) *Family relationships with party* [¶] The arbitrator or a member of the arbitrator's immediate or extended family is a party, a party's spouse or domestic partner, or an officer, director, or trustee of a party. [¶] (2) *Family relationships with lawyer in the arbitration* [¶] The arbitrator, or the spouse, former spouse, domestic partner, child, sibling, or parent of the arbitrator or the arbitrator's spouse or domestic partner is: [¶] (A) A lawyer in the arbitration; [¶] (B) The spouse or domestic partner of a lawyer in the arbitration; or [¶] (C) Currently associated in the private practice of law with a lawyer in the arbitration. [¶] (3) *Significant personal relationship with party or lawyer for a party* [¶] The arbitrator or a member of the arbitrator's immediate family has or has had a significant personal relationship with any party or lawyer for a party. [¶] (4) *Service as arbitrator for a party or lawyer for party* [¶] (A) The arbitrator is serving or, within the preceding five years, has served: [¶] (i) As a neutral arbitrator in another prior or pending noncollective bargaining case involving a party to the current arbitration or a lawyer for a party. [¶] (ii) As a party-appointed arbitrator in another prior or pending noncollective bargaining case for either a party to the current arbitration or a lawyer for a party. [¶] (iii) As a neutral arbitrator in another prior or pending noncollective bargaining case in which he or she was selected by a person serving as a party-appointed arbitrator in the current arbitration [¶] (B) Case information [¶] If the arbitrator is serving or has served in any of the capacities listed under (A), he or she must disclose: [¶] (i) The names of the parties in each prior or pending case and, where applicable, the name of the attorney representing the party in the current arbitration who is involved in the pending case, who was involved in the prior case, or whose current associate is involved in the pending case or was involved in the prior case. [¶] (ii) The results of each prior case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the amount of monetary damages awarded, if any, and the names of the parties' attorneys. [¶] (C) Summary of case information [¶] If the total number of the cases disclosed under (A) is greater than five, the arbitrator must provide a summary of these cases that states: [¶] (i) The number of pending cases in which the arbitrator is currently serving in each capacity; [¶] (ii) The number of prior cases in which the arbitrator previously served in each capacity; [¶] (iii) The number of prior cases arbitrated to conclusion; and [¶] (iv) The number of such prior cases in which the party to the current arbitration, the party represented by the lawyer for a party in the current arbitration or the party represented by the party-arbitrator in the current arbitration was the prevailing party. [¶] (5) *Compensated service as other dispute resolution neutral* [¶] The arbitrator is serving or has served as a dispute resolution neutral other than an arbitrator in another pending or prior noncollective bargaining case involving a party or lawyer for a party and the arbitrator received or expects to receive any form of compensation for serving in this capacity. [¶] (A) Time frame [¶] For purposes of this paragraph (5), 'prior case' means any case in which the arbitrator concluded his or her service as a dispute resolution neutral within two years before the date of the arbitrator's proposed nomination or appointment, but does not include any case in which the arbitrator concluded his or her service before January 1, 2002. [¶] (B) Case information [¶] If the arbitrator is serving or has served in any of the capacities listed under this paragraph (5), he or she must disclose: [¶] (i) The names of the parties in each prior or pending case and, where applicable, the name of the attorney in the current arbitration who is involved in the pending case, who was involved in the prior case, or whose current associate is involved in the pending case or was involved in the prior case; [¶] (ii) The dispute resolution neutral capacity (mediator, referee, etc.) in which the arbitrator is serving or served in the case; and [¶] (iii) In each such case in which the arbitrator rendered a decision as a temporary judge or referee, the date of the decision, the prevailing party, the amount of monetary damages awarded, if any, and the names of the parties' attorneys. [¶] (C) Summary of case information [¶] If the total

■ As reflected in the margin, the disclosure requirements are comprehensive, covering any conceivable circumstance that might call into question

---

number of cases disclosed under this paragraph (5) is greater than five, the arbitrator must also provide a summary of the cases that states: [¶] (i) The number of pending cases in which the arbitrator is currently serving in each capacity; [¶] (ii) The number of prior cases in which the arbitrator previously served in each capacity; [¶] (iii) The number of prior cases in which the arbitrator rendered a decision as a temporary judge or referee; and [¶] (iv) The number of such prior cases in which the party to the current arbitration or the party represented by the lawyer for a party in the current arbitration was the prevailing party. [¶] (6) *Current arrangements for prospective neutral service* [¶] Whether the arbitrator has any current arrangement with a party concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in or, within the last two years, has participated in discussions regarding such prospective employment or service with a party. [¶] (7) *Attorney-client relationship* [¶] Any attorney-client relationship the arbitrator has or has had with a party or lawyer for a party. Attorney-client relationships include the following: [¶] (A) An officer, a director, or a trustee of a party is or, within the preceding two years, was a client of the arbitrator in the arbitrator's private practice of law or a client of a lawyer with whom the arbitrator is or was associated in the private practice of law; [¶] (B) In any other proceeding involving the same issues, the arbitrator gave advice to a party or a lawyer in the arbitration concerning any matter involved in the arbitration; and [¶] (C) The arbitrator served as a lawyer for or as an officer of a public agency which is a party and personally advised or in any way represented the public agency concerning the factual or legal issues in the arbitration. [¶] (8) *Other professional relationships* [¶] Any other professional relationship not already disclosed under paragraphs (2)–(7) that the arbitrator or a member of the arbitrator's immediate family has or has had with a party or lawyer for a party, including the following: [¶] (A) The arbitrator was associated in the private practice of law with a lawyer in the arbitration within the last two years. [¶] (B) The arbitrator or a member of the arbitrator's immediate family is or, within the preceding two years, was an employee of or an expert witness or a consultant for a party; and [¶] (C) The arbitrator or a member of the arbitrator's immediate family is or, within the preceding two years, was an employee of or an expert witness or a consultant for a lawyer in the arbitration. [¶] (9) *Financial interests in party* [¶] The arbitrator or a member of the arbitrator's immediate family has a financial interest in a party. [¶] (10) *Financial interests in subject of arbitration* [¶] The arbitrator or a member of the arbitrator's immediate family has a financial interest in the subject matter of the arbitration. [¶] (11) *Affected interest* [¶] The arbitrator or a member of the arbitrator's immediate family has an interest that could be substantially affected by the outcome of the arbitration. [¶] (12) *Knowledge of disputed facts* [¶] The arbitrator or a member of the arbitrator's immediate or extended family has personal knowledge of disputed evidentiary facts relevant to the arbitration. A person who is likely to be a material witness in the proceeding is deemed to have personal knowledge of disputed evidentiary facts concerning the proceeding. [¶] (13) *Membership in organizations practicing discrimination* [¶] The arbitrator's membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation. Membership in a religious organization, an official military organization of the United States, or a nonprofit youth organization need not be disclosed unless it would interfere with the arbitrator's proper conduct of the proceeding or would cause a person aware of the fact to reasonably entertain a doubt concerning the arbitrator's ability to act impartially. [¶] (14) Any other matter that: [¶] (A) Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial; [¶] (B) Leads the proposed arbitrator to believe there is a substantial doubt as to his or her capacity to be impartial, including, but not limited to, bias or prejudice toward a party, lawyer, or law firm in the arbitration; or [¶] (C) Otherwise leads the arbitrator to believe that his or her disqualification will further the interests of justice." (Ethics Stds., std. 7(d).)

the arbitrator's ability to serve as a neutral hearing officer, and any facts that might possibly show the appearance of bias. Additionally, these disclosure rules supplement and expand the statutory listing of required disclosures by arbitrators contained in Code of Civil Procedure section 1281.9, subd. (a)(1), which requires a proposed arbitrator to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including "[t]he existence of any ground specified in [Code of Civil Procedure] Section 170.1 for disqualification of a judge. . . ." and detailed information about current and prior arbitrations (within the past five years) involving parties to the pending arbitration.[6]

 Under the State Contract Act, upon disclosure of a disqualifying circumstance, "[t]he prospective Arbitrator *shall* be disqualified by the [OAH] *if* an objection is made . . . by [one of the parties] within ten days from the date of the receipt of the information. If neither [party] objects within the time specified, the prospective Arbitrator shall be deemed acceptable." (Regs., § 1322, subd. (b), italics added.) Further, the arbitrator's disclosure obligation under the State Contract Act is a continuing duty, applying from service of the notice of the arbitrator's proposed appointment until the conclusion of the arbitration proceeding. (Regs., § 1322, subd. (c).)

The statutes governing contractual arbitration provide parties with similar automatic disqualification rights. (*Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 729 [75 Cal.Rptr.3d 869] (*Luce Forward*); Code Civ. Proc., §§ 1281.9, 1281.91.) "Section 1281.91 'confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. [Citation.] There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. [Citation.] As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute.' " (*Luce Forward, supra*, at p. 729.)

### 2. *Analysis*

 On our review of the statutory and regulatory provisions, there is no support for Coffman's arguments that the public works arbitration system necessarily results in biased arbitrators. To the contrary, the broad disclosure and disqualification protections provided by the State Contract Act, and its implementing regulations, that incorporate the Ethics Standards, as well as the disclosure rules of Code of Civil Procedure section 1281.9, provide assurance that an arbitrator who ultimately presides over a public works

---

[6] The contractual arbitration statutes set forth in Code of Civil Procedure section 1280 et seq. apply to State Contract Act arbitrations except as specifically provided. (§ 10240.11.)

arbitration hearing will be neutral and acceptable to both parties. The fact that an appointed committee (composed of an equal number of industry and government voting representatives) screens and certifies the arbitrators provides additional grounds for concluding that any arbitrator with a predisposition to one side will not be qualified to serve as a public works arbitrator. To the extent a contractor believes a particular arbitrator is biased, the contractor can raise these concerns in the specific proceeding, either in response to the appointment of an arbitrator, or in response to a motion to confirm the award if new information is discovered during the arbitration proceedings. (See *Brutoco, supra,* 107 Cal.App.4th at pp. 1330–1332.)[7]

As its primary legal theory, Coffman argues the statutory scheme necessarily violates a contractor's due process rights "because the arbitrator must issue rulings favorable to Caltrans in order to obtain future employment." Coffman contends that any arbitrator placed on the Certified Panel develops an inevitable "financial bias" in favor of Caltrans because Caltrans is the "steady and repeat customer" in public works arbitrations. The asserted logic underlying this argument is as follows: (1) arbitrators on the Certified Panel are paid only if they are selected to conduct an arbitration; (2) most arbitrators who are on the Certified Panel have served as an arbitrator on a case in which Caltrans was a party;[8] (3) Caltrans will presumably rely on this prior service factor to disqualify arbitrators who have ruled against it in a prior case; and thus (4) an arbitrator will have a financial incentive to rule in favor of Caltrans because he or she wants to be selected as an arbitrator and the arbitrator does not want to be challenged for cause.

This chain of reasoning is unpersuasive. Most important, Coffman ignores that the rules permit any party (including a contractor) to disqualify an arbitrator based on a disclosure required under the Ethics Standards or statutory rules. One of these required disclosures is that the proposed arbitrator served as an arbitrator on a case in which Caltrans was a party during the previous five years. (Ethics Stds., std. 7(d)(4)(A)(i).) The arbitrator must also disclose details of the prior service, including the identification of the prevailing party and the total amount of monetary damages awarded, if any. (*Id.,* std. 7(d)(4)(B).) If, based on this information, a contractor believes the arbitrator would not be fair or unbiased, the contractor would have the

---

[7] In *Brutoco,* the court rejected a similar "arbitrator bias" challenge to the State Contract Act's arbitration provisions. (*Brutoco, supra,* 107 Cal.App.4th at pp. 1330–1332.) Coffman argues *Brutoco* is not controlling because the court rejected the arguments based on the claimed bias of the Public Works Arbitration Committee and on the absence of supporting facts, rather than on a broader analysis of the statutory and regulatory procedures. Even assuming this reading of *Brutoco* is sound, we have independently reviewed Coffman's arguments, and find them to be without merit.

[8] Although Coffman did not allege this fact, based on its statements in the proceedings below, we assume that Coffman could amend the complaint to add these facts.

automatic right to disqualify this arbitrator. (Regs., § 1322, subd. (b).) In this situation, any suggestion of bias would be removed.

Coffman asserts that a contractor's right to object to an arbitrator does not eliminate the potential bias because individual contractors are parties in public works arbitrations with much less frequency than is Caltrans. Coffman thus claims arbitrators have the incentive to rule in favor of the "repeat customer" rather than the party who is only an occasional litigant in the process. However, under Coffman's own theory, if a contractor is seeking to avoid a "biased" arbitrator, a relevant factor will be the arbitrator's prior rulings in Caltrans arbitrations. If the arbitrator has presided over a Caltrans public works arbitration within the past five years, the contractor will have the right to this information under the Ethics Standards. (*Id.*, std. 7(d)(4)(B).) And if the contractor learns that an arbitrator has consistently ruled in favor of Caltrans, the contractor will have the opportunity to disqualify the arbitrator. Thus, under the structure of the mutual disqualification system, an arbitrator who wishes to be selected for future arbitrations would not have a particular incentive to favor either party, but instead to rule in a fair and impartial manner.

In this regard, this case differs from *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017 [119 Cal.Rptr.2d 341, 45 P.3d 280], relied upon by Coffman. In *Haas*, the California Supreme Court upheld a plaintiff's due process challenge to the manner in which a county selected temporary administrative hearing officers to preside over alleged state law and ordinance violations. (*Id.* at pp. 1020–1021.) Under the challenged rules, the county prosecutor selected the hearing officer "at will," paid the hearing officer's entire fee, and was free to select the same adjudicator for future disputes at the prosecutor's own discretion. (*Id.* at pp. 1021–1022, 1029.) The high court concluded that this ad hoc system for selecting hearing officers was unconstitutional because it created the risk that the officers would have a financial incentive to rule in favor of the county to obtain future work as a hearing officer. (*Id.* at pp. 1030–1031.) The court emphasized that "the County rather than [the opposing party] would be the repeat customer upon whose goodwill, *alone*, the hearing officer's prospect of future employment in that capacity depended." (*Id.* at p. 1030, italics added.)

The arbitrator selection process here is materially different. It is not Caltrans's goodwill "alone" that determines the arbitrator's future employment as a public works arbitrator. Instead, it is *both* parties—Caltrans *and* the contractor—who must mutually agree to the arbitrator if the arbitrator has been a hearing officer at a prior Caltrans arbitration. Unlike in *Haas*, a single party does not have the authority to select the arbitrator. Instead, the contractor and Caltrans must come to an agreement on the arbitrator (or a judge selects the arbitrator), and then each party has a right to strike an arbitrator for any discloseable circumstance, including if the arbitrator has

worked for Caltrans in the prior five years. This system provides strong incentive for an arbitrator to be fair to both parties if he or she desires future arbitration work.

Moreover, unlike in *Haas*, a neutral committee selects the potential individuals to serve as arbitrators in public works disputes, and the arbitrator must obtain recertification every seven years. Composed of an equal number of governmental and industry voting representatives, the Public Works Arbitration Committee is structured to ensure that individuals not strongly associated with either side would be included on the Certified Panel. (§ 10245; see *Brutoco, supra*, 107 Cal.App.4th at pp. 1331–1332.) Additionally, unlike the system in *Haas*, a public works arbitrator is subject to the Ethics Standards, which the *Haas* court noted would serve to "greatly reduce the specific risk of bias" arising from a paid adjudicator's repeat service for the same party. (*Haas v. County of San Bernardino, supra*, 27 Cal.4th at p. 1036.)[9]

We reject Coffman's alternate argument that the fact an arbitrator has presided over a prior Caltrans arbitration necessarily means the arbitrator cannot fairly preside over the case in an unbiased manner. In support of this contention, Coffman cites the disclosure rules applicable to superior court judges (Code Civ. Proc., § 170.1), which apply to arbitrators under Code of Civil Procedure section 1281.9, subdivision (a)(1). These disclosure rules do not mean the arbitrator is unfit to serve as a neutral decision maker. Under the applicable statutes and regulations, the public works arbitrator's neutrality is assured by (1) requiring extensive disclosures of all matters that could cause a person aware of the facts to reasonably entertain doubt that the proposed arbitrator would be able to be impartial (Regs., § 1322, subd. (a)); and (2) requiring the party to timely object to the arbitrator based on the disclosure if the party believes the arbitrator would not be appropriate (Regs., § 1322, subd. (b)). By establishing a broad disclosure requirement and then placing the burden on the parties to timely disqualify the arbitrator at the party's option, the Legislature did not provide that a disclosure, in and of itself, means the arbitrator could not be neutral.[10]

---

[9] Further, the *Brutoco* court stated that because a public works contractor has voluntarily agreed to arbitration as a condition of the government contract, the contractor is not necessarily entitled to the same level of constitutional protections as the litigant in *Haas*. (See *Brutoco, supra*, 107 Cal.App.4th at p. 1331.) *Brutoco* held the proper test is whether the arbitration procedure is procedurally or substantively unconscionable. (*Id.* at p. 1331.) Coffman does not suggest the statutory arbitration procedures are unenforceable under these contract principles. (See *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 592 [59 Cal.Rptr.3d 18] [finding "repeat player" argument did not establish administrative proceeding was unconscionable].)

[10] This disqualification scheme is different from the rules applicable to superior court judges, which provide that a judge "shall be disqualified" if one of the factors apply, unless the party expressly waives the disqualifying factor. (Code Civ. Proc., § 170.1.)

In a related argument, Coffman asserts that every arbitrator who is certified by the Public Works Arbitration Committee, is by definition, "biased" or "non-neutral" because he or she applied to be on the Certified Panel. In support of this argument, Coffman relies on Code of Civil Procedure section 170.1, subdivision (a)(8)(A)(i), which provides a judge "shall be disqualified" if the judge has a current or prospective employment as a dispute resolution neutral, or has participated in discussions concerning such employment, and certain other circumstances are present, including that the arrangement or prior employment was with a party to the proceeding, or the matter before the judge concerns enforcement of an arbitration agreement. Code of Civil Procedure section 1281.9 incorporates portions of section 170.1, subdivision (a)(8)(A)(i) as facts that must be disclosed under certain circumstances. (See § 1281.9, subd. (a)(1).)

Reading these statutes together in a commonsense manner, the provisions do not mean that an arbitrator's application for certification from the Public Works Arbitration Committee reflects bias or the appearance of bias. A central purpose of the Certified Panel is to ensure that parties to public works contracts have an experienced hearing officer with a background in these large-scale projects, leading to better-informed rulings and more efficient dispute resolution. It would defeat this purpose to hold that all such arbitrators are subject to disqualification merely because they applied to be on the Certified Panel. There is no basis for concluding an application to serve on the Certified Panel reflects bias or the appearance of bias.

In its reply brief, Coffman argues the process of mutual disqualification means that an arbitrator will never be selected. It contends that because the challenges are "limitless" there will be an endless process of disqualifications, and that Caltrans will intentionally delay the process by continuing to assert challenges until it obtains an arbitrator who is "biased" in Caltrans's favor.

These arguments do not support Coffman's facial challenge to the statutory scheme. As Coffman acknowledges, numerous Caltrans arbitrations have taken place before a mutually agreed-upon public works arbitrator. The possibility that in some future situation, the parties will have difficulty selecting an arbitrator or that Caltrans will unreasonably delay the process does not show that the statutes " 'inevitably pose[] a present total and fatal conflict with applicable constitutional prohibitions,' " nor does it show the scheme violates due process in "the generality or great majority of cases." (*Guardianship of Ann S., supra*, 45 Cal.4th at p. 1126, italics omitted.)

██ Further, the argument that the selection process is "never-ending" is unsupported by the applicable statutory and rule provisions. The regulations establish a maximum six-month period for parties to agree to an arbitrator, and then the parties may petition the court to appoint an arbitrator. (Regs., § 1321, subd. (d).) The court would then have the inherent equitable authority

to impose reasonable time limits on the selection process. Moreover, we are required to presume good faith on the part of public officials. (Evid. Code, § 664; see *City of Banning v. Desert Outdoor Advertising, Inc.* (1962) 209 Cal.App.2d 152, 155 [25 Cal.Rptr. 621].) If a party believes Caltrans has acted in bad faith in a particular case, the contractor would be entitled to raise the issue with the court in that case.

### B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *As-applied Challenge**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Judgment affirmed. Appellant to pay respondent's costs on appeal.

McDonald, J., and Aaron, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176730.

---

*See footnote, *ante*, page 1135.