Filed 10/17/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BEACH AND BLUFF CONSERVANCY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SOLANA BEACH,<br><br>    Defendant and Appellant;<br><br>CALIFORNIA COASTAL COMMISSION et al.<br><br>    Interveners and Appellants. | D072304<br><br><br>(Super. Ct. No.<br> 37-2013-00046561-CU-WM-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy Casserly, Judge. Affirmed in part, reversed in part with directions.

Jon Corn Law Firm, Jonathan Corn; Pacific Legal Foundation, Meriem L. Hubbard, and Lawrence G. Salzman for Plaintiff and Appellant.

NOSSAMAN, Steven H. Kaufmann, Elizabeth Klebaner; McDougal Love Boehmer Foley Lyon & Canlas, and Johanna N. Canlas for Defendant and Appellant.

Xavier Becerra, Attorney General, John A. Saurenman and Daniel A. Olivas, Assistant Attorneys General, and Jamee Jordan Patterson, Deputy Attorney General, for Intervener and Appellant California Coastal Commission.

ENVIRONMENTAL LAW CLINIC; Mills Legal Clinic at Stanford Law School and Molly Melius for Intervener and Appellant Surfrider Foundation.

## INTRODUCTION

The California Coastal Act of 1976 (Pub. Resources Code,[1] § 30000 et seq.) (the Coastal Act) requires local governments like defendant City of Solana Beach (the City) to develop a local coastal program (LCP). The LCP, consisting of a land use plan (LUP) and implementing ordinances, is designed to further the objectives of the Coastal Act. (§ 30001.5, subd. (c); *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794.) The Coastal Act provides that a local government must submit its LUP to the California Coastal Commission (the Commission) for certification that the LUP is consistent with the policies and requirements of the Coastal Act. (§§ 30512; 30512.2.) After the Commission certifies a local government's LUP, it delegates authority over coastal development permits to the local government. (*Pacific Palisades*, at p. 794, citing §§ 30519, subd. (a), 30600.5, subds. (a), (b), (c).)

In the present case, the City submitted an amended LUP (ALUP) to the Commission. The Commission approved the ALUP with suggested modifications and the City accepted those modifications. In April 2013, Beach and Bluff Conservancy

[1] All subsequent statutory references are to the Public Resources Code unless otherwise specified.

2

(BBC) brought the present action for declaratory relief and traditional mandate under Code of Civil Procedure section 1085, challenging seven specific policies of the City's ALUP as facially inconsistent with the Coastal Act and/or facially unconstitutional.[2]  In September 2016, BBC filed a motion for judgment on its petition for writ of mandate. The court granted BBC's motion and petition for writ of mandate as to two of the challenged policies and denied the motion and writ petition as to the other five challenged policies, and entered judgment accordingly.

BBC's appeal and the cross-appeals by the City, the Commission, and Surfrider Foundation (Surfrider) concern five of the seven policies at issue in the trial court.  BBC contends the court erred in rejecting its claims that one of those policies is facially inconsistent with the Coastal Act, another is facially unconstitutional under the "unconstitutional conditions doctrine," and a third is both inconsistent with the Coastal Act and unconstitutional.  In their cross-appeals, the City, the Commission, and Surfrider contend the court erred in granting BBC's motion for judgment and petition for writ of mandate as to two of the policies.  The City and the Commission also raise a number of procedural challenges to the judgment.

As we shall explain, we conclude that BBC's exclusive remedy to challenge policies in the ALUP on the ground they are inconsistent with the Coastal Act was to file a petition for writ of administrative mandate under Code of Civil Procedure section

---

[2]     BBC filed its original complaint in April 2013.  The Commission intervened in the action in March 2014 before BBC filed its second amended complaint, and Surfrider Foundation (Surfrider) intervened in the action in January 2016.

1094.5 rather than an action for declaratory relief and traditional mandamus. And assuming, without deciding, that administrative mandamus is not the exclusive remedy for BBC's facial challenges to two policies on *constitutional* grounds, we conclude those challenges fail on the merits.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, the City submitted a draft LUP to the Commission. The Commission rejected the City's draft LUP in March 2012 and instead approved a different LUP that the Commission had substantially modified. In May 2012, BBC and property owner Joseph Steinberg challenged the Commission's decision by filing separate petitions for writ of administrative mandate under Code of Civil Procedure section 1094.5. In November 2013, the trial court sustained the Commission's demurrers to the petitions without leave to amend on the ground the actions were barred by the petitioners' failure to name the City as a necessary and indispensable party. BBC and Steinberg appealed the dismissal of those actions, but BBC voluntarily dismissed its appeal and this court dismissed Steinberg's appeal for failure to file an opening brief.

In September 2012, while the writ petitions against the Commission were pending, the Commission notified the City that because the Commission had certified its LUP with suggested modifications, before the LUP could become "effectively certified," the Commission would have to determine the City had taken "formal action . . . to satisfy [the suggested modifications], such as incorporating the modifications." In February 2013, the city council accepted the Commission's suggested modifications to the City's LUP and, in May 2013, adopted additional amendments to the LUP. In January 2014, the

4

Commission approved the City's amendments with additional proposed modifications. In June 2014, the City accepted those proposed modifications and incorporated them into the ALUP that BBC challenges in this action.

BBC filed the present action against the City in April 2013 but did not name the Commission in its complaint. In March 2014, BBC and the City stipulated to allow the Commission to intervene in the case on the side of the City, and the court entered an order allowing the Commission's intervention. The Commission filed a complaint-in-intervention, which essentially constituted its answer to BBC's first amended complaint. In October 2014, BBC filed its second amended complaint for declaratory relief and petition for writ of mandate under Code of Civil Procedure section 1085. In January 2016, the parties stipulated to, and the court ordered, Surfrider's intervention in the action. Surfrider filed a complaint in intervention that defended certain policies BBC challenged in its second amended complaint.

BBC's operative second amended complaint challenges the ALUP policies numbered 2.60, 2.60.5, 4.19, 4.22, and 4.53, in addition to two other policies not at issue in this appeal. BBC contends these policies are either facially unconstitutional or facially inconsistent with the Coastal Act, or both, as noted below.

Policy 2.60 restricts the right of blufftop property owners to repair existing private beach stairways and prohibits construction of new stairways. It allows existing stairways to be maintained in good condition but not expanded, limits the extent of permissible routine repair and maintenance of stairways, and requires private stairways to be phased

5

out at the end of their economic life.  BBC challenges policy 2.60 on the ground it violates section 30610 of the Coastal Act.[3]

Policy 2.60.5 requires conversion of a private beach stairway to a public accessway "where feasible and where public access can reasonably be provided" when the property owner applies for a coastal development permit (CDP) to replace the stairway or more than 50 percent of the stairway.  However, the conversion is required only if any portion of the stairway uses public land or private land subject to a public access easement or deed restriction.[4]  BBC challenges policy 2.60.5 on the grounds it violates section 30610 and is unconstitutional.

_____

[3]     Policy 2.60 states:  "No new private beach stairways shall be constructed, and private beach stairways shall be phased out at the end of the economic life of the stairways.  Existing permitted or private beach stairways constructed prior to the Coastal Act may be maintained in good condition with a CDP where required, but shall not be expanded in size or function.  Routine repair and maintenance shall not include the replacement of the stairway or any significant portion of greater than 50% of the stairway cumulatively over time from the date of the LUP certification."

In relevant part, section 30610 provides that  "no coastal development permit shall be required" for "[i]mprovements to any structure," for "[r]epair or maintenance activities that do not result in an addition to, or enlargement or expansion of, the object of those repair or maintenance activities," and for "[t]he replacement of any structure . . . destroyed by a disaster."

[4]     Policy 2.60.5 states:  "Upon application for a coastal development permit for the replacement of a private beach stairway or replacement of greater than 50% thereof, private beach accessways shall be converted to public accessways where feasible and where public access can reasonably be provided.  The condition to convert the private stairway to a public stairway shall only be applied where all or a portion of the stairway utilizes public land, private land subject to a public access deed restriction or private land subject to a public access easement."

6

Policy 4.19 provides that new shoreline or bluff protective devices that alter natural landforms (e.g., seawalls) "shall not be permitted to protect new development." As a condition for a permit for new blufftop development or redevelopment, the policy requires a property owner to record a deed restriction waiving any future right under section 30235 to construct new bluff retention devices.[5] BBC contends the permit condition imposed by policy 4.19 is unconstitutional.

Policy 4.22 provides: "No bluff retention device shall be allowed for the sole purpose of protecting an accessory structure." BBC challenges policy 4.22 on the ground it violates section 30235, which, in BBC's words, "countenances no distinctions among the kinds of structures that may be protected from erosion."

Policy 4.53 provides that a permit for a bluff retention device will expire when an existing blufftop structure requiring protection is redeveloped, is no longer present, or no longer requires protection. The policy requires property owners to apply for a CDP to remove, modify, or retain a protective device before expiration of the permit and provides

---

[5]    Policy 4.19 states: "New shoreline or bluff protective devices that alter natural landforms along the bluffs or shoreline processes shall not be permitted to protect new development. A condition of the permit for all new development and blufftop redevelopment on bluff property shall require the property owner [to] record a deed restriction against the property that expressly waives any future right that may exist pursuant to Section 30235 of the Coastal Act to new or additional bluff retention devices."

Section 30235 provides: "Revetments, breakwaters, groins, harbor channels, seawalls, cliff retaining walls, and other such construction that alters natural shoreline processes shall be permitted when required to serve coastal-dependent uses or to protect existing structures or public beaches in danger from erosion and when designed to eliminate or mitigate adverse impacts on local shoreline sand supply. Existing marine structures causing water stagnation contributing to pollution problems and fishkills should be phased out or upgraded where feasible."

7

that the CDP will include a condition requiring reassessment of the impacts of the device in 20-year mitigation periods. BBC claims policy 4.53 violates section 30235 by placing unauthorized limitations on the right to protect blufftop structures with bluff retention devices.[6]

The trial court granted BBC's motion for judgment in part and denied the motion in part. The court ruled in BBC's favor as to policies 2.60 and 4.22, finding those policies were inconsistent with the Coastal Act.[7] The court denied BBC's motion as to policies

---

[6]    Policy 4.53 states: "All permits for bluff retention devices shall expire when the currently existing blufftop structure requiring protection is redeveloped (per definition of Bluff Top Redevelopment in the LUP), is no longer present, or no longer requires a protective device, whichever occurs first[,] and a new CDP must be obtained. Prior to expiration of the permit, the bluff top property owner shall apply for a coastal development permit to remove, modify or retain the protective device. In addition, expansion and/or alteration of a legally permitted existing bluff retention device shall require a new CDP and be subject to the requirements of this policy. [¶] The CDP application shall include a re-assessment of need for the device, the need for any repair or maintenance of the device, and the potential for removal based on changed conditions. The CDP application shall include an evaluation of:
"• The age, condition and economic life of the existing principal structure;
"• Changed geologic site conditions including[,] but not limited to, changes relative to sea level rise, implementation of a long-term, large scale sand replenishment or shoreline restoration program; and
"• Any impact to coastal resources, including but not limited to public access and recreation.
"The CDP shall include a condition requiring reassessment of the impacts of the device in 20 year mitigation periods pursuant to Policies 4.49 and 4.53.
"No permit shall be issued for retention of a bluff retention device unless the City finds that the bluff retention device is still required to protect an existing principal structure in danger from erosion, that it will minimize further alteration of the natural landform of the bluff, and that adequate mitigation for coastal resource impacts, including but not limited to impacts to the public beach, has been provided."

[7]    In its order on BBC's motion for judgment, the court referred to policies 2.60 and 4.22 as being "unconstitutional" because they were inconsistent with the Coastal Act.

2.60.5, 4.19, and 4.53.  The court entered judgment in accordance with its order and issued a peremptory writ of mandate commanding the Commission to "[v]acate and set aside [its] actions to approve and certify LUP Policy 4.22 and LUP Policy 2.60, insofar as it includes a condition regarding repair and maintenance of private stairways."[8]

DISCUSSION

I. *Section 30801 Provides BBC's Exclusive Remedy to Challenge a Commission-certified Policy on the Ground It Is Inconsistent with the Coastal Act*

BBC's operative second amended complaint challenged the City's ALUP by seeking declaratory relief and a writ of traditional mandate under Code of Civil Procedure section 1085.  As noted, of the five policies at issue in this appeal, BBC challenged three solely on the ground of inconsistency with the Coastal Act (2.60, 4.22, and 4.53), challenged one solely on the ground it violates the unconstitutional conditions doctrine (4.19), and challenged one on both of those grounds (2.60.5).  The City contends that under section 30801, BBC's exclusive remedy for its challenges lies in administrative

---

Presumably, the court's use of the word "unconstitutional" was inadvertent because BBC did not challenge policy 2.60 or policy 4.22 on constitutional grounds, and the court's finding that the policies were inconsistent with the Coastal Act is not a valid basis for also finding them unconstitutional.

[8]     The judgment states:  "A preemptory [*sic*] writ shall issue from the Court remanding the proceedings to the City and Commission and commanding (a) the Commission to set aside its certification of LUP Policies 4.22 and 2.60, insofar as it includes a condition regarding repair and maintenance of private stairways, and (b) the City to set aside its acceptance of the Commission's suggested modifications relating to LUP policies 4.22 and 2.60, insofar as it includes a condition regarding repair and maintenance of private stairways."  However, the writ of mandate the court ultimately issued is directed at the Commission only; it does not command the City to do anything.

9

mandamus under Code of Civil Procedure section 1094.5 rather than traditional mandamus and declaratory relief.

Section 30801 provides, in relevant part: "Any aggrieved person shall have a right to judicial review of any decision or action of the [C]ommission by filing a petition for a writ of mandate in accordance with Section 1094.5 of the Code of Civil Procedure, within 60 days after the decision or action has become final." As we shall explain, because the Coastal Act requires the Commission to certify a local government's LUP as consistent with the policies and requirements of the Coastal Act (§§ 30512; 30512.2), and in doing so the Commission acts in a quasi-judicial capacity, we conclude BBC's sole remedy to challenge the City's ALUP was to file a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, as provided in section 30801.

We begin with a general overview of the LUP certification process and the difference between traditional mandamus under Code of Civil Procedure section 1085 and administrative mandamus under Code of Civil Procedure section 1094.5.

A.  LUP Certification Process

A local government subject to the Coastal Act must submit its LUP to the Commission for certification that the LUP is consistent with the policies and requirements of the Coastal Act.  (§§ 30512, 30512.2.)  Within 60 days after submission, the Commission determines, after public hearing, whether the proposed LUP raises any substantial issues as to whether it is consistent with the Coastal Act.  (§ 30512, subd. (a)(1).)  If the Commission determines the LUP raises no such issue, it deems the LUP certified as submitted.  (*Ibid.*)  If the Commission determines the LUP raises one or more

10

substantial issues regarding consistency with the Coastal Act, the Commission must identify those issues and, after public hearing, decide whether to certify the LUP, in whole or in part. (§ 30512, subd. (a)(2) & (3).) If the Commission decides not to certify an LUP in whole or in part, it must provide a written explanation and may suggest modifications. (§ 30512, subd. (b).) The local government may adopt those modifications, which "shall cause the [LUP] to be deemed certified upon confirmation of the [Commission's] executive director." (*Ibid.*) Alternatively, the local government may resubmit its own revised LUP to the Commission for certification. (*Ibid.*) After the Commission certifies a local government's LUP, it delegates authority over coastal development permits to the local government. (§§ 30519, subd. (a), 30600.5, subds. (a), (b), & (c).)

The Commission's review of an LUP is "limited to its administrative determination that the [LUP] submitted by the local government does, or does not, conform with the requirements of [the Coastal Act]." (§ 30512.2.) The Commission must certify an LUP if it finds, by a majority vote of its appointed members, that the LUP "meets the requirements of, and is in conformity with, the policies of [the Coastal Act]." (§ 30512, subd. (c).)

B. Traditional Mandamus Versus Administrative Mandamus

"The appropriate type of mandate is determined by the nature of the administrative action or decision under review. In general, 'quasi-judicial' or 'adjudicative acts,' that is, acts that involve the actual application of a rule to a specific set of existing facts are reviewed by administrative mandamus under Code of Civil Procedure section 1094.5.

11

[Citation.] [¶] More specifically, a petition for administrative mandamus under Code of Civil Procedure section 1094.5 is appropriate when the party seeks review of a final 'determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency . . . .' " (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1482 (*California Water*).)

In contrast, a public entity's enactment of a rule "constitutes a [legislative or] 'quasi-legislative' act and is reviewed by ordinary [or traditional] mandate [under Code of Civil Procedure section 1085]. [Citations.] A petition for traditional mandamus is appropriate in . . . actions brought to attack, review, set aside, or void a quasi-legislative . . . or ministerial determination, or decision of a public agency. [Citations.] The trial court reviews an administrative action pursuant to Code of Civil Procedure section 1085 to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires." (*California Water, supra*, 161 Cal.App.4th at 1483, fn. omitted.)

"The determination of whether Code of Civil Procedure section 1094.5 or 1085 applies does not depend on whether the agency is required by statute to hold an evidentiary hearing in the matter, but instead turns on the nature of the challenged action." (*California Water*, *supra*, 161 Cal.App.4th at p. 1483, fn. 19; *Southern California Cement Masons Joint Apprenticeship Committee v. California Apprenticeship*

12

*Council* (2013) 213 Cal.App.4th 1531, 1541 ["[T]raditional mandamus under section 1085 applies to '[q]uasi-legislative' decisions, defined as those involving ' "the formulation of a rule to be applied to all future cases," ' while administrative mandamus under section 1094.5 applies to 'quasi-judicial' decisions, which involve ' "the actual application of such a rule to a specific set of existing facts." ' "].) Traditional mandamus under Code of Civil Procedure section 1085 "may be employed to compel the performance of a duty which is purely ministerial in character; it cannot be applied to control discretion as to a matter lawfully entrusted to the Commission." (*State v. Superior Court* (1974) 12 Cal.3d 237, 247 [referring to former California Coastal Zone Conservation Commission].)

In addition to traditional mandamus, an action for declaratory relief is generally an appropriate means of *facially* challenging a legislative or quasi-legislative enactment of a public entity (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128); however, the appropriate remedy for a challenge to the application of an enactment to specific property—i.e., an "as-applied challenge"—is through administrative mandamus. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 13-14 (*Hensler*); *Agins v. Tiburon* (1979) 24 Cal.3d 266, 272-273, overruled on other grounds in *First English Evangelical Lutheran Church v. County of Los Angeles* (1987) 482 U.S. 304.) As explained in *Walter H. Leimert Co. v. California Coastal Com.* (1983) 149 Cal.App.3d 222, "[t]he law is well established that an action for declaratory relief is not appropriate to review an administrative decision." (*Id.* at p. 230.) Thus, a cause of action challenging the validity of an action by the Commission in applying the Coastal

13

Act to a particular property owner " 'is properly brought under the provisions of section 1094.5 of the Code of Civil Procedure rather than by means of declaratory relief.' [Citation.] A declaratory relief action is an appropriate remedy only if the party is seeking a declaration that a *statute controlling development of coastal lands* is actually unconstitutional." (*Id.* at p. 231, italics added.)[9]

C. Analysis

When the Commission reviews and decides whether to certify a local government's LUP, it acts in a quasi-judicial capacity. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 540-541 (*San Mateo*); *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 488 ["[W]hen the Commission reviews an LCP for conformity to statewide standards it performs a predominantly judicial rather than legislative function."].) Accordingly, any postapproval facial challenge to a local land use policy is essentially a challenge to the Commission's quasi-judicial certification decision. As such, the challenge must be made by petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, as expressly provided in section 30801.

In *San Mateo*, the appellants filed a complaint for declaratory relief and petition for writ of ordinary mandamus against San Mateo County and the Commission, claiming

---

9        Although the vast majority of facial challenges to governmental enactments are on constitutional grounds, a facial challenge may be premised on the ground the enactment is inconsistent with statutory law. (See *T.H. v. San Diego Unified School Dist.* (2004) 122 Cal.App.4th 1267, 1273, 1280-1285 [addressing facial challenge to administrative (school district) regulations on the ground they violated state law]; *Harrahill v. City of Monrovia* (2002) 104 Cal.App.4th 761, 769 [same].)

14

a portion of an initiative measure amending the County's LCP conflicted with the Coastal Act policies encouraging the development of affordable housing and visitor serving recreational facilities.  (*San Mateo*, *supra*, 38 Cal.App.4th at pp. 533, 557.)  The *San Mateo* court concluded this claim was "clearly a 'backdoor' challenge through traditional mandate and declaratory relief to the Commission's certification of [the initiative measure] as consistent with the Coastal Act. . . .  [T]he proper method for such challenge is through bringing of a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.  [Citations.]  *It is established the Commission acts in a quasi-judicial role when it reviews a LCP or LCP amendment for consistency with the Coastal Act.*  [Citation*.*]  *Consequently, challenge to the Commission's actions in LCP certification decisions is via Code of Civil Procedure, section 1094.5.*  (*San Mateo*, at p. 558, italics added, fn. omitted.)

Earlier in its opinion, the *San Mateo* court agreed "with the Commission that insofar as appellants claim [the initiative's] adoption or its provisions conflict with the Coastal Act, such challenge should have been brought in an action for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. [¶] The Commission is the sole agency with statutory authority to review LCP submittals for consistency with the Coastal Act.  (§ 30500 et seq.)  In so doing, the Commission acts in a quasi-judicial capacity.  [Citations.]  Consequently, challenge to the Commission's actions in LCP certification decisions is through administrative mandate."  (*San Mateo,*

15

*supra,* 38 Cal.App.4th at p. 539, fn. 9.)[10] We agree with this analysis. Because the Commission acted in a quasi-judicial role in reviewing and certifying the City's ALUP, the sole remedy for BBC's claims that certain policies in the ALUP conflict with the Coastal Act was administrative mandamus under Code of Civil Procedure section 1094.5, as provided in section 30801.

BBC contends the California Supreme Court's decision in *Yost v. Thomas* (1984) 36 Cal.3d 561, 572 is inconsistent with *San Mateo* and supports BBC's argument that declaratory relief and traditional mandamus are proper means to challenge the City's ALUP because the City acted in a legislative role in enacting the ALUP. BBC's reliance on *Yost* is unavailing. In *Yost* the California Supreme Court addressed the issue of whether the Coastal Act "precludes a referendum on any local land use measure affecting the coastal zone which is adopted by a city council after the . . . Coastal Commission . . . has approved the city's land use plan." (*Yost*, at p. 564.) The *Yost* court held the Coastal Act did not preclude the referendum because the city (Santa Barbara) was acting legislatively in adopting its LUP. (*Id.* at pp. 569-571.) The *Yost* court concluded "*the Coastal Act does not transform the exercise of legislative power into administrative action by virtue of a Commission certification of a land use plan.* The Legislature left wide discretion to local governments to formulate land use plans for the coastal zone and

10    Because the *San Mateo* appellants' claim that the initiative was inconsistent with the Coastal Act was "intertwined" with some of their other challenges to the initiative and it was "difficult to separate these issues," the *San Mateo* court exercised its discretion to "review [the inconsistency] claim despite appellants' failure to advance it by way of an appropriate writ petition." (*San Mateo, supra,* 38 Cal.App.4th at p. 539, fn. 9.)

16

it also left wide discretion to local governments to determine how to implement certified LCPs.  Under such circumstances, the City Council of Santa Barbara was acting legislatively when it adopted the two resolutions and the ordinance which are the subject of this appeal.  Its action is thus subject to the normal referendum procedure." (*Id.* at p. 574, italics added.)

We agree that the italicized statement from *Yost* supports the proposition that the City was acting legislatively in adopting its ALUP.  However, the fact the City was acting legislatively when it enacted the policies at issue here is undisputed and does not defeat the City's argument that an administrative mandamus proceeding against the Commission (with the City named as a necessary party) was BBC's exclusive remedy to challenge policies on the ground of inconsistency with the Coastal Act.  Unlike in *Yost*, where voters challenged by *referendum* certain coastal land use measures that a city adopted after the Commission had approved its LUP, in the present case BBC *judicially* challenged policies in the City's ALUP as inconsistent with the Coastal Act.  Because those challenges are fundamentally challenges to the Commission's quasi-judicial decision to certify the City's ALUP, BBC was required to proceed by administrative mandamus under Code of Civil Procedure section 1094.5, as expressly provided in section 30801.[11]

---

[11]    The trial court in the present case cited *DeVita v. County of Napa* (1995) 9 Cal.4th 763 in ruling that "declaratory relief and traditional mandamus are available to challenge the LUP."  The plaintiffs in *DeVita* filed a complaint for declaratory relief and petition for writ of mandate challenging a voter initiative measure that amended the land use element of Napa County's general plan.  (*Id.* at p. 771.)  The *DeVita* court held that "general plans can be amended by initiative."  (*Id.* at p. 775.)  *DeVita* does not support

17

Our conclusion that challenges to the Commission's LUP certification decisions must be through administrative mandamus, as provided in section 30801, is also consistent with the principle that "[w]here a statute [or statutory scheme] creates new rights and obligations not previously existing in the common law, the express statutory remedy is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate." (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 912; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 79; *Brewer v. Premier Golf Properties* (2008) 168 Cal.App.4th 1243, 1253-1254 [remedies provided in the Labor Code statutory scheme governing meal and rest breaks were exclusive because the scheme created new rights and obligations not previously existing in common law].) The Coastal Act created new rights and obligations regarding the development and management of coastal property not previously existing in common law. Consequently, the statutory remedy provided by section 30801 to persons claiming to be aggrieved by actions and decisions of the Commission in implementing the Coastal Act is the exclusive remedy for such claimants, notwithstanding other common law remedies that might otherwise be available.

In sum, because the Commission was statutorily required to certify the City's ALUP and acted in a adjudicatory role in doing so, BBC's challenges to the certified ALUP are essentially challenges to the Commission's certification decision that were required to have been raised by petition for a writ of administrative mandate under Code

---

the proposition that an action for declaratory relief and traditional mandamus is a proper means to judicially challenge a Commission-approved LUP under the Coastal Act.

18

of Civil Procedure section 1094.5 within 60 days after the Commission's certification decision became final. (§ 30801; *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 607-608.) "Failure to obtain judicial review of a discretionary administrative action by a petition for a writ of administrative mandate renders the administrative action immune from collateral attack, either by inverse condemnation action *or by any other action*." (*Patrick Media,* at p. 608, italics added.) Accordingly, BBC's challenges to policies 2.60, 2.60.5, 4.22, and 4.53 on the ground they are inconsistent with the Coastal Act are barred by BBC's failure to file a timely writ petition against the Commission under Code of Civil Procedure section 1094.5.

## II. *BBC's Constitutional Challenges*

### A. Applicability of Section 30801

As noted, section 30801 expressly provides "[a]ny aggrieved person [the] right to judicial review of *any decision or action of the commission* by filing a petition for a writ of mandate in accordance with Section 1094.5 of the Code of Civil Procedure, within 60 days after the decision or action has become final." (Italics added.) Although on its face, section 30801 applies to *any* challenge to a certification decision of the Commission, including a claim that a Commission-certified policy is facially unconstitutional, the Commission's review of an LUP is statutorily limited to a determination of whether the LUP is consistent with the Coastal Act. (§§ 30512, subd. (c), 30512.2.) Thus, section 30801 arguably does not apply to a *constitutional* challenge to a Commission-certified LUP. However, we need not decide whether section 30801 is the exclusive remedy for facial challenges to Commission-certified policies on constitutional grounds because

19

BBC's challenges to policies 2.60.5 and 4.19 under the unconstitutional conditions doctrine fail on the merits.

B. <u>General Principles Applicable to Facial Challenges on Constitutional Grounds</u>

"Facial challenges to statutes and [local enactments] are disfavored. Because they often rest on speculation, they may lead to interpreting [enactments] prematurely, on the basis of a bare-bones record. [Citation.] Also, facial challenges conflict with the fundamental principle of judicial restraint that courts should not decide questions of constitutional law unless it is necessary to do so, nor should they formulate rules broader than required by the facts before them." (*Building Industry Assn. of Bay Area v. City of San Ramon* (2016) 4 Cal.App.5th 62, 90, citing *Wash. State Grange v. Wash. State Republican Party* (2008) 552 U.S. 442, 450.)

The interpretation of a legislative enactment and the determination of its constitutionality are questions of law we review de novo. (*Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 90.) "[W]e start from 'the strong presumption that the [enactment] is constitutionally valid.' [Citations.] 'We resolve all doubts in favor of the validity of the [enactment]. [Citation.] Unless conflict with a provision of the state or federal Constitution is clear and unmistakable, we must uphold the [enactment].' " (*Building Industry Assn. of Bay Area v. City of San Ramon*, *supra*, 4 Cal.App.5th at p. 90.)

"In evaluating a facial challenge, a court considers 'only the text of the [challenged enactment] itself, not its application to the particular circumstances of an individual.' [Citation.] The California Supreme Court has not articulated a single test for determining

20

the propriety of a facial challenge.  [Citation.]  Under the strictest test, the [enactment] must be upheld unless the party establishes the [enactment] ' "inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions." '  [Citation.]  Under the more lenient standard, a party must establish the [enactment] conflicts with constitutional principles ' "in the generality or great majority of cases." '  [Citation.] Under either test, the plaintiff has a heavy burden to show the [enactment] is unconstitutional in all or most cases, and ' "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the [enactment]." ' "  (*Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1144-1145.)

      C.  Facial Challenges Based on Alleged Unconstitutional Taking of Property

When the theory of the facial challenge is that a legislative enactment effects an unconstitutional taking of property without just compensation–i.e., that the mere enactment of the legislation works a taking, the claimant must additionally show that the enactment effects a physical taking or deprives the claimant of all economically beneficial or viable use of the property.  (*Lucas v. S. C. Coastal Council* (1992) 505 U.S. 1003, 1015-1017 (*Lucas*); *Del Oro Hills v. City of Oceanside* (1995) 31 Cal.App.4th 1060, 1076 (*Del Oro*).)  This requirement derives from federal takings/inverse condemnation law.

The United States Supreme Court has "described at least two discrete categories of regulatory action as compensable without case-specific inquiry into the public interest advanced in support of the restraint.  The first encompasses regulations that compel the

21

property owner to suffer a physical 'invasion' of his property. . . . [¶] The second situation in which [the Supreme Court has] found categorical treatment appropriate is where regulation denies all economically beneficial or productive use of land. [Citations.] . . . [T]he Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests *or denies an owner economically viable use of his land.*' " (*Lucas*, *supra*, 505 U.S. at pp. 1015-1016; see *NJD, Ltd. v. City of San Dimas* (2003) 110 Cal.App.4th 1428, 1438-1439; *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 462 (*California Building*) ["As a general matter, so long as a land use regulation does not constitute a physical taking or deprive a property owner of all viable economic use of the property, such a restriction does not violate the takings clause insofar as it governs a property owner's future use of his or her property . . . ."].)[12]

As this court noted in *Del Oro*, "an ordinance is safe from a facial challenge if it preserves, through a permit procedure or otherwise, some economically viable use of the

---

[12]    A court's determination of whether a legislative enactment effects a compensable taking without the necessity of a case-specific inquiry because it results in a physical invasion of property or deprives a property owner of all economically beneficial or productive use of the land goes to the *facial* constitutionality of the enactment. (*Del Oro, supra,* 31 Cal.App.4th at p. 1076 ["Generally, a facial challenge presents an issue of law and case-specific factual inquiry is not required."]; *Hensler, supra,* 8 Cal.4th at pp. 12-13 [rejecting claim that a compensable taking of plaintiff's property necessarily occurred when ordinance was enacted because plaintiff conceded the ordinance "did not deny him all economically feasible use of the property"; *id.* at p. 24 [referring to plaintiff's claim as a "facial challenge . . . predicated on a theory that the mere enactment of the . . . ordinance worked a taking of plaintiff's property"]; *Lucas, supra,* 505 U.S. at p. 1015, fn. 6 [" ' "[T]he test to be applied in considering [a] facial [takings] challenge is fairly straightforward.  A statute regulating the uses that can be made of property *effects a taking if it 'denies an owner economically viable use of his land*.' " ' "].)

22

property.  [Citation.]  In such a case, administrative remedies must be pursued if available *because the challenge is actually an 'as-applied' one*."  (*Del Oro, supra,* 31 Cal.App.4th at p. 1076, italics added.)  Such an "as-applied" challenge is not ripe for adjudication until there has been a " 'final, definitive, position regarding' " how the government will apply the challenged enactment to the complaining party's land; only then can it be determined whether a taking has occurred.  (*Hensler, supra,* 8 Cal.4th at p. 10, quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank* (1985) 473 U.S. 172, 191.)  Further, as explained in *Hensler*, the governmental entity faced with an adjudication that proposed application of a regulation to particular property effects a taking has a range of available options to avoid paying compensation for the taking, including exempting the property from the regulation, amending the regulation, or even repealing the regulation.  (*Id.* at pp. 11-12, 13, 27 [" 'The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required.' "].)

D.  <u>Unconstitutional Conditions Doctrine</u>

As noted, BBC alleged in its second amended complaint and argues on appeal that policies 2.60.5 and 4.19 are unconstitutional because they violate the unconstitutional conditions doctrine.

"The doctrine of unconstitutional conditions limits the government's power to require one to surrender a constitutional right in exchange for a discretionary benefit." (*San Diego County Water Authority v. Metropolitan Water District of Southern*

23

*California* (2017) 12 Cal.App.5th 1124, 1158; *California Building*, *supra*, 61 Cal.4th at p. 457.) In the takings context, the United States Supreme Court has held "the government may impose such a condition only when the government demonstrates that there is an 'essential nexus' [citation] and 'rough proportionality' [citation] between the required dedication and the projected impact of the proposed land use." (*Id.* at p. 458, citing *Nollan v. Cal. Coastal Com.* (1987) 483 U.S. 825 (*Nollan*) and *Dolan v. City of Tigard* (1994) 512 U.S. 374 (*Dolan*).) This test for determining whether a condition is unconstitutional is commonly referred to as the "*Nollan/Dolan* test" (see *California Building, supra,* 61 Cal.4th at pp. 458-459), and is viewed as a type of "heightened scrutiny." (*Id.* at p. 470; *Building Industry Assn. of Central California v. County of Stanislaus* (2010) 190 Cal.App.4th 582, 590; see *Koontz v. St. Johns River Water Mgmt. Dist.* (2013) 570 U.S. 595, 622 (dis. opn. of Kagan, J.).)

" '[A] predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.' [Citation.] Or, in other words, the condition is one that would have constituted a taking of property without just compensation if it were imposed by the government on a property owner outside of the permit process." (*California Building, supra,* 61 Cal.4th at pp. 459-460.) The unconstitutional conditions doctrine applies only where the condition at issue constitutes an "exaction" in the form of either the conveyance of a property interest or the payment of money; the doctrine does not apply where the government simply restricts the use of property without demanding an exaction. (*Id.* at pp. 457, 460.)

24

BBC contends policies 2.60.5 and 4.19 *facially* violate the unconstitutional conditions doctrine because they do not satisfy the *Nolan/Dolan* "essential nexus" and "rough proportionality" test. However, another limitation on the applicability of the unconstitutional conditions doctrine to takings claims is that the doctrine, with its attendant *Nollan/Dolan* test, generally is not applied to *facial* challenges. (*Action Apartment Ass'n v. City of Santa Monica* (2008) 166 Cal.App.4th 456, 470 (*Action Apartment*) ["*Nollan/Dolan* test developed for use in land exaction takings litigation applies only in the case of individual adjudicative permit approval decisions; not to generally applicable legislative general zoning decisions."].)

The *Action Apartment* court affirmed the dismissal of a complaint that facially challenged a Santa Monica ordinance requiring developers of multi-family housing projects to construct affordable housing. (*Action Apartment, supra,* 166 Cal.App.4th at pp. 459-461.) The plaintiff argued it was entitled to assert a facial challenge to the ordinance using the *Nollan/Dolan* test. Based on settled United States Supreme Court and California Supreme Court case law, the *Action Apartment* court concluded the *Nollan/Dolan* test applies only to as-applied challenges and not to facial challenges. The court stated: "Both the United States and California Supreme Courts have explained the two-part *Nollan/Dolan* test developed for use in land exaction takings litigation applies *only in the case of individual adjudicative permit approval decisions; not to generally applicable legislative general zoning decisions.* [Citations.] . . . 'The "sine qua non" for application of *Nollan/Dolan* scrutiny is thus the "discretionary deployment of the police power" in "the imposition of land-use conditions in individual cases." [Citation.] Only

25

"individualized development fees warrant a type of review akin to the conditional conveyances at issue in *Nollan* and *Dolan.*" ' " (*Action Apartment,* at p. 470, quoting *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 670 (*San Remo*).)[13] Accordingly, the *Action Apartment* court concluded the *Nollan/Dolan* nexus and rough proportionality test, which is used to determine whether a proposed condition is unconstitutional, did not apply to the plaintiff's facial challenge to the ordinance. (*Ibid.*)

Because the *Nollan/Dolan* test applies to challenges under the unconstitutional conditions doctrine (*California Building, supra,* 61 Cal.4th at pp. 457-458), *Action Apartment* supports the proposition that the unconstitutional conditions doctrine does not apply to facial challenges like BBC's in the present case, although *Action Apartment* did not involve an exaction or refer to the facial challenge in that case as an unconstitutional conditions claim.

BBC disagrees with this proposition and cites *San Remo* and the federal case *Levin v. City & County of San Francisco* (2014) 71 F.Supp.3d 1072 (*Levin*) as examples of courts having adjudicated *facial* challenges based on the unconstitutional conditions doctrine. BBC states that the City has mistakenly represented that *San Remo* did not involve an unconstitutional conditions claim.

---

13    The *Action Apartment* court earlier stated that "[t]he United States and California Supreme Courts have applied the *Nollan/Dolan* nexus and rough proportionality test only when an adjudicative decision is made in the case of an individual developer's request for approval of a project." (*Action Apartment, supra,* 166 Cal.App.4th at p. 460.)

26

*San Remo* did not identify the plaintiffs' facial challenge to the challenged ordinance in that case as an unconstitutional conditions claim, and the phrase "unconstitutional conditions doctrine" does not appear in the Supreme Court's opinion. The challenged ordinance in *San Remo* required owners of a hotel wanting to convert all of the rooms in the hotel to daily rentals rather than long-term rentals to pay a fee into a governmental fund for the construction of low and moderate-income housing.  (*San Remo, supra,* 27 Cal.4th at p. 649.)  The Court of Appeal in *San Remo* found that the ordinance involved an exaction and applied the heightened scrutiny of the *Nollan/Dolan* test (*San Remo, supra,* 27 Cal.4th at pp. 657), but the California Supreme Court reversed and concluded the housing replacement fees in question were not subject to *Nollan/Dolan* scrutiny because the fee was generally applicable to a class of property owners and was not applied to individual owners on an ad hoc basis.  (*San Remo,* at pp. 668-670.)  Thus, to the extent the *San Remo* plaintiffs' constitutional challenge and bid for heightened scrutiny under the *Nollan/Dolan* test was an unconstitutional conditions claim, the Supreme Court decided it did not lie.

In *Levin*, the plaintiffs facially challenged a San Francisco ordinance that "require[d] property owners wishing to withdraw their rent-controlled property from the rental market to pay a lump sum to displaced tenants."  (*Levin, supra*, 71 F.Supp.3d at p. 1074.)  The federal district court applied the unconstitutional conditions doctrine and the *Nollan/Dolan* test, and concluded the ordinance did "not pass constitutional muster" because it was "a monetary exaction that 'lack[s] an essential nexus and rough proportionality to the effects of the proposed new use of the specific property at issue.'

27

[Citation.] *The Ordinance does so on its face*, because the explicit purpose of the statute is to approximate a rent differential sum that is neither caused by nor related to the impact of property owners' decisions to exercise the right to regain possession of their parcels." (*Id.* at pp. 1088-1089, italics added.)

Application of the unconstitutional conditions doctrine to the facial challenge in *Levin* appears to be an anomaly that could be explained by the fact the ordinance at issue enabled the plaintiffs to calculate the precise sum they would be required to pay (*Levin, supra*, 71 F.Supp.3d at p. 1074) and, therefore, the case was ripe under the rule that "takings claims that challenge a legislative demand for money . . . are ripe without a prior damages suit [seeking reimbursement after payment of the challenged money demand]." (*Id.* at p. 1079.) In any event, as a federal district court case, *Levin* is not binding authority, and it is inapposite because none of the policies at issue in the present case require an exaction in the form of payment of money. However, even assuming BBC's challenges to policies 2.60.5 and 4.19 under the unconstitutional conditions doctrine do not *automatically* fail because they are *facial* challenges, we conclude they fail for the reasons explained below.

E. <u>Analysis of BBC's Constitutional Challenges to Policies 2.60.5 and 4.19</u>

1. *Policy 2.60.5*

Policy 2.60.5 provides: "Upon application for a coastal development permit for the replacement of a private beach stairway or replacement of greater than 50% thereof, private beach accessways shall be converted to public accessways where feasible and where public access can reasonably be provided. The condition to convert the private

28

stairway to a public stairway shall only be applied where all or a portion of the stairway utilizes public land, private land subject to a public access deed restriction or private land subject to a public access easement."

BBC contends this policy is unconstitutional because it exacts private property for public use without compensation as a condition of a permit. BBC argues that repairing or replacing existing stairways creates no new burden on public access that could justify depriving private owners the right to exclude the public without compensation.

Policy 2.60.5 does not meet the requirements for a successful facial challenge on the ground it effects a compensable taking by imposing an unconstitutional condition. Policy 2.60.5's permit condition requiring conversion of a private stairway to a public accessway cannot be deemed *on its face* to conflict with constitutional principles in the generality or great majority of cases because it does not inevitably require a property owner to convert a private stairway to a public stairway when the owner replaces or repairs the stairway. The policy requires conversion only where it is feasible, public access can be reasonably provided, and the stairway already partially uses public land or a land subject to a public easement or deed restriction. Thus, whether the policy effects an exaction or physical invasion of private property for which the City must pay just compensation under the *Nollan/Dolan* test can be determined only on a case-by-case basis as individual property owners subject to the policy's permit condition apply for permits to repair or replace their beach stairways.

29

1. *Policy 4.19*

Policy 4.19 provides: "New shoreline or bluff protective devices that alter natural landforms along the bluffs or shoreline processes shall not be permitted to protect new development. A condition of the permit for all new development and blufftop redevelopment on bluff property shall require the property owner [to] record a deed restriction against the property that expressly waives any future right that may exist pursuant to Section 30235 of the Coastal Act to new or additional bluff retention devices."

Section 30235 provides: "Revetments, breakwaters, groins, harbor channels, seawalls, cliff retaining walls, and other such construction that alters natural shoreline processes shall be permitted when required to serve coastal-dependent uses or to protect existing structures or public beaches in danger from erosion and when designed to eliminate or mitigate adverse impacts on local shoreline sand supply. Existing marine structures causing water stagnation contributing to pollution problems and fishkills should be phased out or upgraded where feasible."

BBC contends the waiver condition imposed by policy 4.19 is an unconstitutional exaction because there is no logical connection or nexus between the waiver requirement and any identified adverse public impact of new development.

BBC's challenge to Policy 4.19 fails to meet two requirements for a facial challenge on the ground the policy effects an unconstitutional taking of property, and also fails to meet a separate requirement for application of the unconstitutional conditions doctrine. First, policy 4.19 cannot be deemed on its face to inevitably pose a present total

30

and fatal conflict with applicable constitutional prohibitions or impose a taking in most cases because the condition applies only to "new development and blufftop redevelopment on bluff property," which for specific properties may or may not occur in the future. Thus, BBC's unconstitutional conditions challenge to policy 4.19 falls within the principle that "the plaintiff has a heavy burden to show the [enactment] is unconstitutional in all or most cases, and ' "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the [enactment]." ' " (*Coffman, supra,* 176 Cal.App.4th at p. 1145.)

Second, the condition requiring a property owner to waive the right under section 30235 to new or additional bluff retention devices does not constitute a physical invasion of property or deprive blufftop property owners of all economically viable use of their properties. The extent to which the policy would cause economic harm to particular property owners can be determined only on a case-by-case basis through as-applied challenges to the policy.

Finally, as noted above, *California Building* stated that the unconstitutional conditions doctrine does not apply "where the government simply *restricts* the use of property without demanding the conveyance of some identifiable protected property interest (a dedication of property or the payment of money) as a condition of approval." (*California Building*, 61 Cal.4th at p. 460, italics added.) "[T]here can be no valid unconstitutional conditions takings claim without a government exaction of property . . . ." (*Id.* at p. 457.) As the trial court correctly ruled, the condition on future

31

development imposed by policy 4.19 does not require an exaction but "simply places a restriction on the way the homeowner may use its property." Specifically, policy 4.19 does not require a conveyance of money or property; it requires the property owner to record a deed *restriction* against the property that expressly waives any future right under section 30235 to new or additional bluff retention devices. Because policy 4.19 simply restricts the use of property without demanding an exaction of a property interest or money as a condition of approval, the unconstitutional conditions doctrine does not apply.

In conclusion, BBC's constitutional challenges essentially fail because they are not ripe for adjudication until there has been a final, definitive, position regarding how the City will apply the challenged enactment to the complaining party's land; only then can it be determined whether a taking has occurred. (*Hensler, supra,* 8 Cal.4th at pp. 10-11.) Notably, the City and Commission are under an express statutory directive to not apply the Coastal Act in a way that would infringe constitutional rights. Section 30010 provides: "The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the [C]ommission, port governing body, or local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor. This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States."

Similarly, policy 5.9.5 of the City's ALUP articulates the following general policy regarding new development: "Ensure the private and public interest in protecting and preserving private property rights under the state and federal Constitutions, the Coastal Act, and local ordinances, such that regulations are not overreaching and no private owner is denied reasonable use of his, her or its property. In accordance with Public Resources Code section 30010, this Policy is not intended to increase or decrease the rights of any property owner under the Constitution of the State of California or of the United States."

Invalidating the policies on BBC's facial challenges before they are applied would deprive the City and Commission the opportunity to apply them in a way that will not result in unconstitutional takings without just compensation, as required by section 30010 and policy 5.9.5. And where specific application of a policy *would* constitute a taking requiring compensation, facial invalidation before application would deny the City its range of available options to avoid paying compensation for the taking, such as exempting the property from the regulation, amending the regulation, or rescinding the regulation. (*Hensler, supra,* 8 Cal.4th at pp. 11-12, 13.)

III. *The Disposition of This Appeal Does Not Preclude Future As-applied Challenges to the City's ALUP*

Although we have upheld the City's ALUP in its entirety against BBC's facial challenges, the disposition of this appeal does not preclude any property owner affected by the ALUP from later challenging the application any of its policies to the owner's specific property. Many federal reviewing courts have held that the doctrine of res

33

judicata does not bar claims that arise from events that postdate the filing of the initial complaint. In *Chicanos Por La Causa, Inc. v. Napolitano* (9th Cir. 2009) 558 F.3d 856, the Ninth Circuit Court of Appeals observed that the plaintiffs' successful facial challenge to a statute was "brought against a blank factual background of enforcement and outside the context of any particular case. If and when the statute is enforced, and the factual background is developed, other challenges to the Act as applied in any particular instance or manner will not be controlled by [this] decision." (*Id.* at p. 861; accord, *Whole Woman's Health v. Hellerstedt*, ___ U.S. ____, 136 S.Ct. 2292, 2305 [doctrine of claim preclusion did not bar petitioners' postenforcement as-applied challenge to statute because it was not the same claim as petitioners' pre-enforcement facial challenge to statute]; *Howard v. City of Coos Bay* (9th Cir. 2017) 871 F.3d 1032, 1040 ["[F]or purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint."]; *Morgan v. Covington Twp.* (3d Cir. 2011) 648 F.3d 172, 178 ["[R]*es judicata* does not bar claims that are predicated on events that postdate the filing of the initial complaint[.]"].)

We agree with the principle that the res judicata doctrine does not bar claims that arise from future applications for permits governed by the City's ALUP. " [']The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065, quoting *Panos v. Great*

34

*Western Packing Co.* (1943) 21 Cal.2d 636, 637.)  None of the property owners in the City who are affected by the subject ALUP have had the opportunity to litigate the validity or constitutionality of any of the policies in the ALUP as applied to them. Therefore, the doctrines of res judicata and collateral estoppel do not bar them from bringing future challenges to the application of policies to their specific properties.  As the Commission stated in its responding and opening brief, "Property owners in the City, including individual members of BBC, will not be without a remedy regarding these policies.  They can always challenge the application of the policies to their properties."[14]

## DISPOSITION

The portions of the judgment granting BBC's motion for judgment on its petition for writ of mandate as to the first cause of action of BBC's second amended complaint (challenging policy 4.22) and fifth cause of action (challenging policy 2.60) and directing issuance of a peremptory writ of mandate are reversed.  The judgment is otherwise

---

[14]    Although it is unnecessary to address the issue, we note that the City and Commission's argument that BBC's *facial* challenges to policies 4.19 and 4.22 are barred under the doctrine of res judicata has merit.  The City and Commission contend those challenges are barred by res judicata because policies 4.19 and 4.22 were not added or amended between BBC's first dismissed action and the present action.  In *Cal. Coastal Com. v. Superior Court* (1989) 210 Cal.App.3d 1488, this court held that once a decision by the Commission becomes final because it is not challenged by a petition for writ of administrative mandate under section 30801 within 60 days, it is res judicata as to any future challenge and cannot be later challenged in a collateral proceeding.  (*Cal. Coastal Com.,* at pp. 1493-1494, 1496-1501, 1497, fn. 5.)  Accordingly, the Commission's decision to approve policies 4.19 and 4.22 became final when the prior action challenging that decision was dismissed and, under the doctrine of res judicata, cannot be collaterally challenged in the present action.

In light of our disposition of BBC's challenges to the ALUP on the grounds discussed above, we need not address the City and Commission's argument that BBC was required to provide an administrative record to obtain judicial review of the challenged policies.

35

affirmed. The December 6, 2016 order ruling on BBC's motion for judgment on its petition for writ of mandate and the peremptory writ of mandate filed on April 5, 2017, are vacated. The court is directed to enter an order denying BBC's motion for judgment and petition for writ of mandate in their entirety. The City, the Commission, and Surfrider are awarded their costs on appeal.


HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

36