Filed 3/16/20 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR SOUTH BAY COASTAL ACCESS, | D075387 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2017-00048213-CU-TT-CTL) |
| CITY OF SAN DIEGO, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 18, 2020, be modified as follows:

1.     On page 2, line 9, the sentence commencing with "Because the" and ending with "Commission's regulations" is modified to read as follows:

> Because the Commission has certified the City's local coastal program, which includes specific exemptions that are applicable to this case, those provisions apply here rather than the Commission's regulations.

2.     On page 15, line 7, the sentence commencing with "As we have" and ending with "by the commission" is modified to read as follows:

> As we have already discussed, when the Commission has certified a local government's LCP, except in certain cases not relevant here, "the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission."

3. On page 20, line 12, the sentence commencing with "However" and ending with "CDP decisions" is modified as follows:

> However, because the Commission has certified the City's LCP, which includes specific exemptions applicable here, Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgated thereunder do not apply to the City's CDP decisions in this case.

4. On page 20, line 14, the sentence commencing "As the Coastal" and ending with "portion thereof" is modified as follows:

> As the Coastal Act makes clear, after a local government's LCP is certified by the Commission, except in certain cases not relevant here, "the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof."

5. On page 21, line 5, the sentence commencing "The development" and ending with "certified LCP" is modified as follows:

> Except as otherwise provided in the Coastal Act, the development review authority provided for in Chapter 7 does not apply when a local government has obtained a certified LCP.

6. On page 21, at the end of line 7, add as footnote 6 the following footnote, which will require renumbering of all subsequent footnotes:

> 6. To be clear, Public Resources Code, section 30519, subdivision (a) does not have the effect of rendering inapplicable *all* of the provisions appearing in Chapter 7 when a local government has adopted a certified LCP. Importantly, Public Resources Code, section 30519, subdivision (a) does not refer to the *whole* of Chapter 7, but only to "*the development review authority provided for in Chapter 7*," and it also excepts "appeals to the commission" (Pub. Resources Code, § 30519, subd. (a), italics added). Further, as subdivision (b) makes clear, subdivision (a) does not apply in cases where the Commission still retains original jurisdiction to issue a coastal development permit, including development in the coastal zone "on any tidelands, submerged lands, or on public trust lands," or "within any state

2

university or college within the coastal zone," (Pub. Resources Code, § 30519, subd. (b)), and Public Resources Code section 30601.3 makes clear that Public Resources Code, section 30519, does not apply when a consolidated coastal development permit application is appropriate. Accordingly, even after a local government has adopted a certified LCP, any provision in Chapter 7 concerning appeals to the Commission remain fully applicable, as well as all other provisions in Chapter 7 that do not pertain to the exercise of "development review authority provided for in Chapter 7." (Pub. Resources Code, § 30519, subd. (a).) Because it is beyond the scope of this opinion, we do not opine on which provisions in Chapter 7 the Legislature intended to fall outside the scope of the "development review authority provided for in Chapter 7." The relevant point for our purposes is that Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgated thereunder plainly concern "the development review authority provided for in Chapter 7," and thus do not apply to the City's issuance of a coastal development permit because the City has adopted a certified LCP that contains specific exemptions.

7. On page 22, delete the last sentence of the first full paragraph, and replace it with the following:

> Instead, the Coastal Act expressly *allows* for the City's review of an application for a coastal development permit to be governed by its certified LCP provisions.

There is no change in the judgment.

McCONNELL, P. J.

Copies to: All parties

3

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CITIZENS FOR SOUTH BAY COASTAL ACCESS,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>CITY OF SAN DIEGO,<br><br>       Defendant and Appellant. | D075387<br><br><br>(Super. Ct. No. 37-2017-00048213-CU-TT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed and remanded with directions.


Mara W. Elliott, City Attorney, George F. Schaefer, Assistant City Attorney, and Jenny K. Goodman, Deputy City Attorney, for Defendant and Appellant.

Briggs Law Corporation, Cory J. Briggs and Anthony N. Kim for Plaintiff and Respondent.

The City of San Diego (the City) appeals from a judgment in a lawsuit filed by Citizens for South Bay Coastal Access (Plaintiff), which challenged the City's issuance of a conditional use permit allowing it to convert a motel that it recently purchased into a transitional housing facility for homeless misdemeanor offenders. Specifically, the City contends that the trial court erred by ruling that the City was required to obtain a coastal development permit for the project because the motel is located in the Coastal Overlay Zone as defined in the City's municipal code. We conclude that the trial court erred in concluding that a coastal development permit was required under state law regulations promulgated by the California Coastal Commission (the Commission). Because the Commission has certified the City's local coastal program, those provisions apply here rather than the Commission's regulations. Under the City's local coastal program, the project is exempt from the requirement to obtain a coastal development permit because it involves an improvement to an existing structure, and no exceptions to the existing-structure exemption are applicable. We accordingly reverse the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The City participates in the San Diego Misdemeanants At-Risk Track program (SMART), which provides homeless misdemeanor offenders with housing, case management, job training, and other supportive services required to end the cycle of homelessness. To expand the transitional housing capacity of the SMART program, the City located a suitable property in the South Bay area of the City which was operated as a Super 8 motel (the Property). The City planned to rehabilitate the existing building

2

on the Property with interior and exterior improvements including new office space, computer rooms, client community space, kitchens, storage, roofing, low water landscaping, ADA accessibility, safety and security upgrades, interior and exterior cameras, electrical vehicular and pedestrian gates, new sidewalks, and a new fire suppression system. The City's plan also reduced the existing 53 parking spaces in the parking lot to a total of 25 parking spaces and added passive open green spaces.

The Property is located near the southern end of San Diego Bay, and is in the Coastal Overlay Zone as defined by the City. (San Diego Mun. Code, § 132.0402) The City's municipal code provides that "[a] Coastal Development Permit [CDP] issued by the City is required for all coastal development of a premises within the Coastal Overlay Zone" unless an exemption applies. (San Diego Mun. Code, § 126.0702, subd. (a), italics omitted.)

On July 24, 2017, the City Council passed a resolution approving the acquisition of the Property for the SMART program. Prior to the adoption of the resolution, the City filed a notice of exemption stating that the acquisition of the Property was exempt from the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) under several categorical exemptions. The same notice stated that "[t]he project is located within the Coastal Overlay Zone, but does not require a [CDP]."

After acquiring the Property, the City Council passed a resolution approving a conditional use permit for the project on December 11, 2017, which permitted the City to rehabilitate the existing structure by transforming it into a transitional housing facility for the SMART program, with 42 transitional housing rooms. In connection with the

3

approval of the conditional use permit, the City Council passed a resolution determining that the project was exempt from CEQA.  A PowerPoint presentation from City staff for the hearing on the conditional use permit stated that "[t]he facility is exempt from the requirement to obtain a [CDP], pursuant to [San Diego Municipal Code] [s]ection 126.0704."  On December 13, 2017, the City issued the conditional use permit approved by the City Council.

The next day, on December 14, 2017, Plaintiff filed a "Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandate" against the City (the Petition). Plaintiff alleged that it "opposes the Project based on environmental- and economic-justice grounds.  The Project is located in the South Bay portion of [the City], in the coastal zone, and involves the conversion of the community's only commercial lodging facility into a transitional-housing facility.  That leaves nowhere for tourists to lodge when they visit the South Bay's coastal resources.  The Project thus violates [the City]'s [Local Coastal Program] and/or effectively amends it (without approval from the California Coastal Commission) by substantially curtailing public access to coastal resources in the South Bay."  The Petition contained a single cause of action titled "Illegal Approval of Project," which alleged that the approval of the project violated CEQA, the California Coastal Act of 1976 (Pub. Resources Code, § 30000, et seq.) (the Coastal Act), and the Planning and Zoning Law (Gov. Code, § 65000, et seq.).  As relevant here, with respect to the Coastal Act, the Petition alleged, among other things, that "[t]he Project requires the issuance of a [CDP], which [the] City has not approved for the Project."

4

After the City filed an answer, the parties submitted briefing on the Petition. Plaintiff presented various arguments with respect to CEQA, the Coastal Act, and conformity to the City's planning documents.

As relevant to the issue presented in this appeal, Plaintiff argued that "[t]he Project violates the Coastal Act" because "the City failed to obtain the requisite CDP before moving forward with the Project, and no exemption applies." Plaintiff did not dispute that the portion of the City's municipal code governing the requirement to obtain a CDP for development in the Coastal Overlay Zone contained an exemption for improvements to existing structures. (San Diego Mun. Code, § 126.0702, subd. (a).) Further, Plaintiff did not dispute that none of the municipal code's *exceptions* to the existing-structure exemption for certain types of improvements were applicable in this case. (San Diego Mun. Code, § 126.0702, subd. (a).) As relevant here, San Diego Municipal Code section 126.0704, subdivision (a)(3) sets forth an exception to the existing structure exemption for "[i]mprovements that result in an intensification of use," which it defines as "a change in the use of a lot or premises which, based upon the provisions of the applicable zone, requires more off-street parking than the most recent legal use on the property." (Italics omitted.) The City apparently identified this exception to the existing-structure exemption as the most relevant during its analysis of whether a CDP was required, but the City determined that the exception does not apply because the City's

planned use of the Property will require *less* parking, and the City therefore plans to significantly *reduce* the number of parking spaces on the Property.[1]

Instead of arguing that the City's municipal code provisions required the City to obtain a CDP for the project, Plaintiff argued that the Coastal Act and the regulations promulgated thereunder by the Commission had the effect of *preempting* the City's municipal code and required the City to obtain a CDP. Specifically, Plaintiff argued, "the [San Diego Municipal Code's] exemptions are pre-empted by state law to the extent they have any applicability at all. Every improvement to a structure other than a single-family home is presumptively exempt from the CDP requirement unless the Commission prescribes otherwise by formal regulation; the adoption of a regulation takes the improvement out of the exempt category and puts it into the non-exempt category. . . . [(]§ 30610[, subd.] (b).[)] As it turns out, the Commission has adopted at least two regulations that separately trigger the CDP-requirement for the Project. [¶] First, there is a regulation that requires a CDP for '[a]ny improvement to a structure which changes the intensity of use of the structure.' [(Cal. Code. Regs.], tit. 14, § 13253[, subd.] b)(7)[)]. . . . [¶] Second, there is a regulation that requires a CDP for '[a]ny improvement made

---

[1]  Although Plaintiff does not take issue with the fact that the City's project on the Property will not require additional off-street parking and therefore will not create an intensification of use as defined in the City's municipal code, Plaintiff contends in its appellate briefing that a Commission staff member engaged in correspondence with the City prior to approval of the conditional use permit in which the Commission twice rejected the City's contention that the project would not result in an intensification of use. We have reviewed the relevant correspondence from the Commission staff member, and we note that it does not discuss the concept of intensification of use as it is defined for purposes of the existing-structure exception in the City's municipal code.

pursuant to a conversion of an existing structure from a . . . visitor-serving commercial use to a use involving a fee ownership . . . .' [Cal. Code. Regs.], tit. 14, § 13253[,subd.] (b)(8)."  As Plaintiff summarized the argument in its reply briefing to the trial court, the state-law provisions it identified "forbid (1) development involving a decrease in intensity of use and (2) development pursuant to a conversion of an existing structure from a visitor-serving commercial use to a use involving fee ownership.  Yet, that is precisely the type of development [San Diego Municipal Code] [s]ection 126.0704[, subdivision] (a)(3) purports to allow.  That [San Diego Municipal Code] provision is therefore invalid."

The trial court issued a tentative ruling granting in part and denying in part Plaintiff's petition for writ of mandate.  The trial court found no merit to Plaintiff's argument under CEQA.  It also determined that the project was consistent with the applicable community plan.

However, the trial court then determined that there was merit to Plaintiff's argument that the City improperly failed to obtain a CDP.  As a preliminary matter, the trial court noted that under the existing-structure exemption set forth in the City's municipal code, "substantial evidence supports the City's determination that the project did not require a CDP because of the section 126.0704[,subdivision] (a) exemption. . . . Acquisition of the Super 8 hotel and the associated improvements for use as transitional housing is exempted from the requirement of obtaining a CDP as an improvement to an existing structure.  There is substantial evidence that the improvements did not result in an intensification of use, including a decrease in required parking. . . . Thus, a facial

7

application of the exemption supports the City's position." However, after determining that substantial evidence supported the City's application of the existing-structure exemption, the trial court then turned to the issue of preemption. The trial court agreed with Plaintiff's argument that state law preempted portions of the existing-structure exemption set forth in the City's municipal code:

> "On the other hand, the [San Diego Municipal Code] section 126.0704 exemption, as applied, is pre-empted by state law. 'An ordinance contradicts state law if it is inimical to state law; i.e., it penalizes conduct that state law expressly authorizes or permits conduct which state law forbids.' *Suter v. City of Lafayette* (1997) 57 Cal. App. 4th 1109, 1124. Public Resources Code, section 30610[, subd.] (b) provides: 'Notwithstanding any other provision of this division, no coastal development permit shall be required pursuant to this chapter for the following types of development . . . : . . . [¶] . . . (b) Improvements to any structure other than a single-family residence or a public works facility; provided, however, that the commission shall specify, by regulation, those types of improvements which (1) involve a risk of adverse environmental effect, (2) adversely affect public access, or (3) involve a change in use contrary to any policy of this division. Any improvement so specified by the commission shall require a coastal development permit.' The companion regulation is found at Title 14, section 13253[, subd.] (b) [of the California Code of Regulations], and provides in relevant part:
>
> " '(b) Pursuant to Public Resources Code Section 30610[, subd.] (b), the following classes of development require a coastal development permit because they involve a risk of adverse environmental effect, adversely affect public access, or involve a change in use contrary to the policy of Division 20 of the Public Resources Code:
>
> "[¶] . . . [¶]
>
> " '(7) Any improvement to a structure which changes the intensity of use of the structure;
>
> " '(8) Any improvement made pursuant to a conversion of an existing structure from a multiple unit rental use or visitor-serving commercial use to a use involving a fee ownership or long-term leasehold

including but not limited to a condominium conversion, stock cooperative conversion or motel/hotel timesharing conversion.'

"The administrative record indicates that the [San Diego] Municipal Code section 126.0704 exemption was applied in such a way that a CDP was not required because the project resulted in a lowered intensification of use (as evidenced by less required parking). However, this is forbidden by state law. Instead, any 'change' in intensity, not just a higher intensity, requires a CDP. In addition, the administrative record indicates that the subject hotel conversion project seeks to convert the hotel from multiple unit commercial use to a use involving a fee ownership. This is also forbidden by state law in the absence of a CDP. As a result, the section 126.0704 exemption, as applied, is pre-empted by state law. The exemption is not valid and a CDP is required."

At the hearing on the petition, the trial court agreed to allow the City to submit supplemental briefing on the issue of preemption. After reviewing the supplemental briefing, the trial court issued an order confirming its tentative ruling and further discussing the preemption issue: "The Coastal Act requires local governments to develop local coastal programs, comprised of a land use plan and implementing ordinances to promote the Coastal Act's objectives. [(]*Kalnel Gardens, LLC v. City of Los Angeles* (2016) 3 Cal.App.5th 927, 940.[)] 'Under the Coastal Act, the local coastal program and development permits issued by local agencies are not just matters of local law. Instead, they embody state policy. A fundamental purpose of the Coastal Act is to ensure that state policies prevail over local government concerns.' [(]*Id*.[)] As discussed within the tentative (now confirmed) ruling, there is a fundamental state policy requiring a CDP for any development involving an improvement changing the intensity of use of a structure, or the 'conversion of an existing structure from a multiple unit rental use or visitor-serving commercial use to a use involving a fee ownership or long-term leasehold.' . . .

9

[San Diego] Municipal Code section 126.0704, as applied, contradicts this state law and is inimical to state policy."

The trial court thereafter entered judgment, granting in part and denying in part Plaintiff's petition for writ of mandate. On January 2, 2019, the trial court issued a peremptory writ of mandate requiring that the City shall "1. Obtain a coastal development permit before proceeding with any project on the project site that would change the intensity of use (whether the change is an increase or decrease in intensity)" and "2. Refrain from implementing any contemplated use of the project site that by law requires the issuance of a coastal development permit."

The City appeals from the judgment.[2]

II.

DISCUSSION

A.    *Standard of Review*

The resolution of this appeal depends on whether the trial court erred in concluding that the portions of the City's existing-structure exemption in San Diego

_____

[2]    While this appeal was pending, the City filed a request that we take judicial notice of a decision by the Commission on December 11, 2019, concerning the City's project at the Property. Specifically, after the trial court's judgment, the City obtained a CDP for the project on October 22, 2019. Plaintiff appealed the CDP to the Commission arguing that the project did not conform to the City's LCP with regard to the protection of visitor-serving overnight accommodations and public access policies. On December 11, 2019, the Commission decided that it would not hear the appeal because no substantial issue existed with respect to the grounds of the appeal. We grant the City's request to take judicial notice, but we note that the Commission's decision has no direct relevance to the preemption issues presented in this appeal, and thus we have no occasion to consider the substance of the Commission's decision in deciding this appeal.

10

Municipal Code section 126.0704 were preempted by state law. We apply a de novo standard of review in deciding that issue. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 21 [" 'The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review.' "].)

B.      *Legal Principles Applicable to the Preemption Analysis*

Before turning to the specific local and state-law provisions at issue, we first discuss the principles applicable to a preemption analysis. "[T]he 'general principles governing state statutory preemption of local land use regulation are well settled. . . . "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*" (Cal. Const., art. XI, § 7, italics added.) " 'Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].' " ' " (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1150 (*Big Creek Lumber*).)

Here, the type of preemption identified by Plaintiff and the trial court arises from an alleged *contradiction* with state law. "A local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1068.) "The 'contradictory and inimical' form of preemption does not apply unless the ordinance directly requires what the state statute forbids or prohibits what the state enactment demands. [Citations] Thus, no inimical conflict will be found where it is reasonably possible to comply with both the state and

11

local laws." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*City of Riverside*).) "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." (*Big Creek Lumber*, *supra*, 38 Cal.4th at p. 1149.)

C.      *The Coastal Act and Regulations Promulgated Thereunder*

The next step in our analysis is to examine the state-law provisions that the trial court believed to be contradictory to the City's municipal code provisions governing the issuance of CDPs.

The state law provisions at issue here are certain portions of the Coastal Act and regulations promulgated thereunder by the Commission. "The Coastal Act 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. The Legislature found that "the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people"; that "the permanent protection of the state's natural and scenic resources is a paramount concern"; that "it is necessary to protect the ecological balance of the coastal zone" and that "existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state . . . ." ([Pub. Resources Code,] § 30001, subds. (a) and (d).)' [Citation] The Coastal Act is to be 'liberally construed to accomplish its purposes and objectives.' (Pub. Resources Code, § 30009.)" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793-794 (*Pacific Palisades*).)

12

"There is no doubt that the Coastal Act is an attempt to deal with coastal land use on a statewide basis." (*Yost v. Thomas* (1984) 36 Cal.3d 561, 571.) However, "[t]he Coastal Act expressly recognizes the need to 'rely heavily' on local government '[t]o achieve maximum responsiveness to local conditions, accountability, and public accessibility . . . .' (Pub. Resources Code, § 30004, subd. (a).) As relevant here, it requires local governments to develop local coastal programs [(LCPs)], comprised of a land use plan and a set of implementing ordinances designed to promote the [Coastal Act's] objectives of protecting the coastline and its resources and of maximizing public access." (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794.) "The Coastal Act provides that a local government must submit its [land use plan] to the [Commission] for certification that the [land use plan] is consistent with the policies and requirements of the Coastal Act. ([Pub. Resources Code,] §§ 30512, 30512.2.) After the Commission certifies a local government's [land use plan], it delegates authority over coastal development permits to the local government. (*Pacific Palisades*, at p. 794, citing [Pub. Resources Code,] §§ 30519, subd. (a), 30600.5, subds. (a), (b), (c).)" (*Beach & Bluff Conservancy v. City of Solana Beach* (2018) 28 Cal.App.5th 244, 252.)

As particularly relevant here, Public Resources Code section 30519, subdivision (a) provides that with certain exceptions that are not relevant in this case, "[e]xcept for appeals to the commission, as provided in Section 30603, after a local coastal program, or any portion thereof, has been certified and all implementing actions within the area affected have become effective, *the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised*

13

*by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies* and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof." (Pub. Resources Code, § 30519, subd. (a), italics added.) Similarly, subdivision (a) of Public Resources Code section 30600 states that, in general, "any person . . . wishing to perform or undertake any development in the coastal zone . . . shall obtain a coastal development permit." However, as clarified in subdivision (d), "[a]fter certification of its local coastal program . . . a coastal development permit shall be obtained from the local government *as provided for in Section 30519 . . . .*" (Pub. Resources Code, § 30600, subd. (d), italics added.) These two provisions make clear that, except in certain cases not relevant here, after a local government's LCP is certified by the Commission, the Commission no longer exercises original jurisdiction over the issuance of a CDP.

However, because the Commission still retains original jurisdiction over the issuance of CDPs in certain circumstances, such as when no LCP has been certified or in other cases such as development on tidelands, submerged lands or public trust lands, (Pub. Resources Code, § 30519, subds. (a), (b)), the Coastal Act contains provisions governing the Commission's exercise of its original jurisdiction to issue CDPs. As relevant here, Public Resources Code section 30610 states that "[n]otwithstanding any other provision of this division, no coastal development permit shall be required *pursuant to this chapter* for the following types of development and in the following areas: [¶] . . . (b) Improvements to any structure other than a single-family residence or a public works

14

facility; provided, however, that the commission shall specify, by regulation, those types of improvements which (1) involve a risk of adverse environmental effect, (2) adversely affect public access, or (3) involve a change in use contrary to any policy of this division. Any improvement so specified by the commission shall require a coastal development permit." (Pub. Resources Code, § 30610, italics added.) When stating that "no coastal development permit shall be required *pursuant to this chapter*," the statute is referring to Chapter 7 (commencing with Section 30600). As we have already discussed, when the Commission has certified a local government's LCP, "the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission." (Pub. Resources Code, § 30519, subd. (a).)

To comply with the directive in Public Resources Code section 30610, subdivision (b) that the Commission "specify, by regulation, those types of improvements which (1) involve a risk of adverse environmental effect, (2) adversely affect public access, or (3) involve a change in use contrary to any policy of this division," the Commission promulgated a regulation, which provides in relevant part:

> "(b) Pursuant to Public Resources Code Section 30610[, subd.] (b), the following classes of development require a coastal development permit because they involve a risk of adverse environmental effect, adversely affect public access, or involve a change in use contrary to the policy of Division 20 of the Public Resources Code:
>
> "[¶] . . . [¶]
>
> "(7) Any improvement to a structure which changes the intensity of use of the structure;
>
> "(8) Any improvement made pursuant to a conversion of an existing structure from a multiple unit rental use or visitor-serving commercial

15

use to a use involving a fee ownership or long-term leasehold including but not limited to a condominium conversion, stock cooperative conversion or motel/hotel timesharing conversion." (Cal. Code Regs., tit. 14, § 13253.)

As we have explained, the trial court relied on this regulation to conclude that state law contradicted the City's municipal code provisions governing whether a CDP was required for the development on the Property.

D. *The City's LCP*

Coastal development in the City is governed by an LCP that was certified by the Commission. As the Petition alleges, "[the City] implements and administers a local coastal program ('LCP') that was certified by the California Coastal Commission as being consistent with the Coastal Act. Generally speaking, the LCP applies to all development and land uses in [the City]'s portion of the 'coastal zone' as defined by Public Resources Code Section 30103."

The City's LCP includes Chapter 12, Article 6, Division 7 of the San Diego Municipal Code, titled "Coastal Development Permit Procedures" ("Division 7"). Division 7 includes San Diego Municipal Code section 126.0702, subdivision (a), which states that "[a] Coastal Development Permit issued by the City is required for all coastal development of a premises within the Coastal Overlay Zone." (Italics omitted.) As we have discussed, the Property at issue here is located in the Coastal Overlay Zone. Further, the City does not dispute that its issuance of a conditional use permit to transform the former Super 8 motel into a transitional housing facility constitutes "coastal development of a premises" within the meaning of this municipal code provision.

16

However, Division 7 also includes San Diego Municipal Code section 126.0704, which sets forth *exemptions* for the requirement to obtain a CDP.[3] As relevant here, section 126.0704, subdivision (a) provides an exemption for "[i]mprovements to existing structures," and it then lists certain specific *exceptions* to that existing-structure exemption. (Italics omitted.)

The only exception to the existing-structure exemption that the parties have identified as potentially relevant here states that the exemption does not apply to "[i]mprovements that result in an intensification of use," and further states that "intensification of use means a change in the use of a lot or premises which, based upon the provisions of the applicable zone, requires more off-street parking than the most recent legal use on the property." (San Diego Mun. Code, § 126.0704, subd. (a)(3), italics omitted.) It is undisputed that the transformation of the Super 8 motel into a transitional housing facility will *not* require more off-street parking.[4]

---

[3] Plaintiff contends that "there's zero evidence in the record that [San Diego Municipal Code] section 126.0704[,subdivision] (a) was ever certified by the Coastal Commission." We disagree. The City has identified ample evidence in the record, of which the trial court took judicial notice, to show that Division 7, including section 126.0704, subdivision (a), was certified by the Commission. Further, the City has filed a request that we take judicial notice of meeting agendas and minutes of the Commission, which further establish that the Commission certified the portion of the City's Local Coastal Program that includes its coastal development permit procedures. We grant the request to take judicial notice.

[4] The trial court concluded that substantial evidence supports a finding that the project would result in "a decrease in required parking."

17

Based on the LCP's existing-structure exemption, along with the fact that no *exception* to the exemption applies, the City concluded that no CDP was required prior to issuing the conditional use permit for the Property.

E.    *The Exemption for Improvements to Existing Structures in the City's LCP Does Not Contradict the Coastal Act or the Regulations Promulgated Thereunder*

The trial court based its preemption ruling on a comparison of the scope of the existing-structure exemption in the City's LCP with the scope of the existing-structure exemption in the regulation that the Commission promulgated pursuant to Public Resources Code section 30610, subdivision (b).  (Cal. Code Regs., tit. 14, § 13253, subd. (b).)  Specifically, the trial court noted two ways in which the existing-structure exemption in the City's LCP was more permissive of certain improvements without a CDP than the existing-structure exemption in the Commission's regulation.

First, the City's LCP disallows an existing-structure exemption if the improvement would "result in an intensification of use."  (San Diego Mun. Code, § 126.0704, subd. (a)(3).)  However, "intensification of use" is narrowly defined in the City's LCP as a use that requires more off-street parking.  (*Ibid*.)  In contrast, the Commission's regulation disallows an existing-structure exemption for an improvement that "changes the intensity of use of the structure."  (Cal. Code Regs., tit. 14, § 13253, subd. (b)(7).)  The Commission's regulation does not limit the situations in which a "change[]" in "the intensity of use" might occur and does not focus solely on parking.  Indeed, as the trial court concluded, because only a "change[]" in intensity of use is required, the Commission's regulation could require a CDP even when, as is the case with the City's

18

intended use of the Property, there may be a *decrease* in intensity. As the trial court explained, "The administrative record indicates that the [San Diego] Municipal Code section 126.0704 exemption was applied in such a way that a CDP was not required because the project resulted in a lowered intensification of use (as evidenced by less required parking). However, this is forbidden by state law. Instead, any 'change' in intensity, not just a higher intensity, requires a CDP." [5]

Second, the Commission's regulation disallows an existing-structure exemption if the improvement is "made pursuant to a conversion of an existing structure from multiple unit rental use or visitor serving commercial use to a use involving a fee ownership or long-term leasehold . . . ." (Cal. Code Regs., tit. 14, § 13253, subd. (b)(8).) The City's LCP contains no comparable provision.

---

[5] In support of its argument that Public Resources Code section 30610 and the regulations promulgated thereunder require a CDP when there is any *change* in intensity of use, even a decrease, Plaintiff relies on *Pacific Palisades*, *supra*, 55 Cal.4th 783. In that case, our Supreme Court decided that under the Coastal Act's definition of "development," all subdivisions in the coastal zone qualified as developments, even if they would not alter the density or intensity of use of the land. (*Id*. at pp. 795-796.) Plaintiff argues that *Pacific Palisades* (1) shows that the Coastal Act is concerned with *any* type of change in intensity of use; and (2) supports an interpretation of the Commission's regulation referring to an improvement that "changes the intensity of use of the structure" (Cal. Code Regs., tit. 14, § 13253, subd. (b)(7)) as referring to *any* type of change in intensity, even a decrease. We note that *Pacific Palisades* is not directly on point because it concerned the definition of "development" rather than the scope of permissible exemptions under the Coastal Act. Moreover, as we will explain, because the City's approval of the project is controlled by its LCP, not by the Commission's regulations, it is ultimately not relevant whether Plaintiff is correct that the Commission's regulation referring to an improvement that "changes the intensity of use of the structure" (Cal. Code Regs., tit. 14, § 13253, subd. (b)(7)) means *any* type of change in intensity, even a decrease.

19

Based on the contradiction between the scope of these two aspects of the existing-structure exemption in the City's LCP and in the Commission's regulation, the trial court concluded that the City's LCP was preempted to the extent it was more permissive with respect to the existing structure exemption than the Commission's regulation.

Although we understand the trial court's preemption ruling, it contains a fundamental flaw. As a basic analytical premise, the trial court assumed that Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgated thereunder were intended to apply to the City's decision whether a CDP is required for a proposed coastal development. Finding a contradiction between the Commission's regulations and the City's LCP, *both of which* the trial court assumed were applicable here, the trial court concluded that the Commission's regulations should prevail. However, because the Commission has certified the City's LCP, Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgated thereunder do not apply to the City's CDP decisions. As the Coastal Act makes clear, after a local government's LCP is certified by the Commission, "the development review authority provided for in Chapter 7 (commencing with Section 30600) shall no longer be exercised by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof." (Pub. Resources Code, § 30519, subd. (a).) "After certification of its local coastal program . . . a coastal development permit shall be obtained from the local government *as provided for in*

20

*Section 30519 . . . .*" (Pub. Resources Code, § 30600, subd. (d), italics added.) Further, the Coastal Act clarifies that the existing-structure exemption described in Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgates thereunder apply only with respect to CDP's "required pursuant to this chapter," i.e., Chapter 7. The development review authority provided for in Chapter 7 does not apply when a local government has obtained a certified LCP. (Pub. Resources Code, § 30519, subd. (a).)

In sum, preemption based on a contradiction between a local ordinance and state law arises only when "the ordinance directly requires what the state statute forbids or prohibits what the state enactment demands." (*City of Riverside*, *supra*, 56 Cal.4th at p. 743.) Here, the Coastal Act makes it clear that the existing-structure exemption as described in Public Resources Code section 30610, subdivision (b) and the regulations that the Commission promulgates thereunder do not apply to the City's CDP decisions because the City's coastal development is governed by a certified LCP. Because the state-law provisions that the trial court identified do not apply to the City, the City's LCP does not "require[] what the state statute forbids or prohibit[] what the state enactment demands." (*City of Riverside*, at p. 743.) Instead, the Coastal Act expressly *allows* for a

21

local government to be governed by its certified LCP provisions while the Commission's decision whether to issue a CDP is governed by provisions of state law.[6]

DISPOSITION

The judgment is reversed, and this matter is remanded with directions that the trial court (1) enter an order denying Plaintiff's petition for writ of mandate; and (2) vacate the peremptory writ of mandate.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

---

[6]     Because we conclude that the trial court erred in ruling that the relevant portions of the City's LCP were preempted by state law, we need not, and do not, consider the other grounds that the City presents in support of its appeal, including that Plaintiff is improperly seeking to challenge the City's LCP outside of the time period to bring such a challenge, and that the Petition was untimely because Plaintiff did not file it within 90 days of the City's resolution approving its acquisition of the Property.